# United States Court of Appeals
## For the First Circuit

No. 08-1552

RAFIC CHEDID,

Petitioner,

v.

ERIC H. HOLDER, JR.,* ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Lipez, Circuit Judges.

Saher Joseph Macarius, Audrey Youssef Botros, and Law Offices of Saher J. Macarius, for petitioner.
Gregory G. Katsas, Assistant Attorney General, Greg D. Mack, Senior Litigation Counsel, and Wendy Benner-León, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, for respondent.

July 17, 2009

_____

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael B. Mukasey as the respondent.

**LIPEZ**, **Circuit Judge**.  Petitioner Rafic Chedid, a native and citizen of Lebanon, seeks review of an April 3, 2008 denial by the Board of Immigration Appeals (BIA) of his second motion to reopen immigration proceedings to allow him to apply for adjustment of status based on his marriage to a United States citizen.  More than two years earlier, the BIA had upheld the decision of an immigration judge (IJ) denying Chedid's application for withholding of removal and relief under the Convention Against Torture (CAT).  The BIA agreed with the IJ that Chedid failed to establish that he suffered past persecution on account of a protected ground or that it was more likely than not that his life would be threatened or he would be tortured by the Lebanese government upon returning to Lebanon.

Several months later, Chedid filed his first motion to reopen the proceedings to allow him to apply for adjustment of status based on an I-130 visa petition that his wife had since filed with the United States Citizenship and Immigration Services (USCIS).  The Board denied this motion both because it was untimely and also based on its finding that Chedid had failed to make out a prima facie case of the bona fides of his marriage.  One year later, Chedid filed a second motion to reopen, claiming that the time and number limitations on filing his motion should be equitably tolled and the proceedings reopened due to ineffective

-2-

assistance of his prior counsel.  It is the Board's denial of this second motion to reopen that we now review.  We deny the petition.

I.

## A. Removal Proceedings and First Motion to Reopen

Because the merits of Chedid's withholding of removal and CAT claims are not before us, we provide only a brief factual summary of his claims.  Chedid, a Lebanese citizen, entered the United States on February 9, 2001, as a nonimmigrant visitor with authorization to remain in the United States until May 8, 2001. The former Immigration and Naturalization Service (INS)[1] issued a Notice to Appear (NTA) on January 6, 2003, charging petitioner with being subject to removal for overstaying his visa.  On May 12, 2003, Chedid appeared with counsel before the IJ and admitted the factual allegations in the NTA and conceded that he was removable as charged.  However, he also sought withholding of removal and protection pursuant to the regulations implementing the CAT based on his fear of persecution or torture because of his political opinion and religion.  Chedid is a Maronite Christian.  After a hearing on September 15, 2004, at which Chedid testified, the IJ

---

[1] The INS's enforcement functions have since been transferred to the Department of Homeland Security (DHS), pursuant to section 441 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).

issued an oral decision denying his application for withholding of removal and CAT protection.[2]

The IJ found that Chedid had failed to carry his burden of establishing that he had been a victim of past persecution in Lebanon on account of one of the statutory grounds, or that it was more likely than not that he would be persecuted or tortured upon his return to that country. However, the IJ granted Chedid's request for voluntary departure and entered an alternate order of removal in case Chedid failed to comply with the grant of voluntary departure by the deadline of November 15, 2004.

Chedid, through counsel, timely appealed the IJ's decision to the BIA. On February 21, 2006, the Board affirmed the IJ's decision and extended Chedid's voluntary departure deadline to sixty days from the date of its order, or April 22, 2006.

On May 19, 2006, Chedid filed a motion to reopen and remand the proceedings to the IJ. His motion, based on his January 12, 2006 marriage to a United States Citizen, sought a remand to allow him to apply for adjustment of status based on an I-130 immediate relative visa petition that his wife had filed on his behalf on February 23, 2006. The board denied the motion to reopen on June 15, 2006.

---

[2] Because Chedid did not submit an application for asylum within one year after the date of his arrival in the United States, he was ineligible for such relief. See 8 U.S.C. § 1158(a)(2)(B).

-4-

Because Chedid's counsel, Antonio Sambrano Sorraco (Sambrano), did not file an EOIR-27 form entering his appearance in connection with Chedid's motion to reopen, the Board considered Chedid as proceeding pro se on his motion to reopen. The Board found that Chedid did not qualify for reopening because the motion was filed after the April 22 expiration of the sixty-day voluntary departure period. The BIA also concluded that Chedid had failed to submit sufficient evidence to make out a prima facie case of the bona fides of his marriage, and therefore did not meet his burden for reopening in any event. Chedid did not appeal the Board's June 15, 2006 order to this Court.

**B. Second Motion to Reopen**

Over a year later, through new counsel, Chedid filed another motion to reopen with the BIA. He argued that the time and number limitations on motions to reopen prescribed in 8 C.F.R. §§ 1003.2(c)(2) & (c)(3)[3] should be equitably tolled and his proceedings reopened due to the ineffective assistance of his prior counsel. In support of this claim, he faulted Sambrano for filing an "ill-composed" I-130 petition and for an untimely filing of Chedid's first motion to reopen. In the affidavit attached to his motion to reopen, Chedid claimed that, a week after the Board

---

[3] Subject to certain exceptions, a petitioner may file only one motion to reopen, and he must do so within ninety days of the date of entry of the Board's final decision. See 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2).

denied his appeal, he had spoken with Sambrano, who had assured him that because he was now married to a U.S. citizen, he would be granted adjustment of status on the basis of his I-130 petition and he "had nothing to worry about with regard to the asylum case." Then, after receiving the Board's decision on his first motion to reopen, Sambrano told him that he had to leave the country.

Chedid also argued in his second motion to reopen that he had satisfied the requirements for making out a claim of ineffective assistance of counsel as set forth in In re Lozada, 19 I. & N. Dec. 637, 639 (BIA 1988).[4] Lozada requires an alien seeking to reopen removal proceedings based on a claim of ineffective assistance of counsel to include with the motion 1) an affidavit explaining the petitioner's agreement with counsel regarding legal representation; 2) evidence that counsel has been informed of the allegations of ineffective assistance and has had an opportunity to respond; and 3) if it is asserted that counsel's handling of the case involved a violation of ethical or legal responsibilities, a complaint against the attorney filed with disciplinary authorities or, in the alternative, an explanation for why such a complaint has not been filed. Id. The bar complaint

---

[4] Although Attorney General Michael Mukasey had issued a ruling modifying the Lozada requirements prior to leaving office, see Matter of Compean, 24 I. & N. Dec. 710 (AG 2009), that decision was subsequently revoked by Attorney General Holder. 25 I. & N. Dec. 1 (AG 2009). Accordingly, the Lozada standard still governs the petitioner's claim. Id.

submitted with Chedid's motion to reopen had been sent with a cover letter stating that Chedid was "not seeking sanctions or disciplinary action" against his prior counsel, but rather that he was filing the complaint "in order to reopen his case before the Immigration Court" and comply with the Lozada requirements. A similar cover letter was sent to Sambrano along with a copy of the complaint.

Finally, in the motion to reopen, Chedid claimed that he had "new evidence" as to the bona fides of the new marriage that would establish his prima facie eligibility for adjustment of status. The new evidence was a set of materials submitted by Chedid's new counsel on November 13, 2006, as a supplement to his wife's I-130 petition, and included evidence of a joint bank account that Chedid maintained with his citizen spouse, letters from friends describing the spousal relationship, and a copy of the couple's September, 2006 electric bill.

## C. The BIA's Decision

On April 3, 2008, the BIA denied Chedid's second motion to reopen on the grounds that it was untimely and exceeded the numerical limitations for such motions set forth in 8 C.F.R. § 1003.2(c)(2). Although the Board acknowledged that equitable tolling of the time limitations may be available in some cases alleging ineffective assistance of counsel, it found that Chedid had not acted with the "due diligence" required to invoke this

doctrine. Specifically, the Board noted that approximately a year had transpired between the Board's denial of Chedid's first motion to reopen and the filing of his second. The Board rejected as an insufficient excuse for the delay Chedid's assertion that he had "searched for several months for an attorney willing to take this case and file a new motion to reopen." Furthermore, the Board held that Chedid had not substantially complied with the Lozada requirements, finding the bar complaint and the notice to Sambrano "troubling and not substantial, much less full, Lozada compliance." The Board explained:

> On the one hand, the respondent would have us believe that Mr. Sambrano's representation so damaged his case as to render him ineligible for an immigration benefit, adjustment of status, that he otherwise would warrant. On the other hand, the respondent, though current counsel, made it quite clear to both Mr. Sambrano and his state bar's disciplinary board of his desire that "no sanctions or disciplinary action be taken against" Mr. Sambrano, and that the complaint was being filed merely "to fulfill" Lozada requirements.

As a result, the Board found the allegations of harm to "ring hollow" and noted that "pro forma" compliance with the Lozada requirements was insufficient to make out a case for ineffective assistance of counsel.

## II.

"We review the Board's denial of the motion to reopen for abuse of discretion, setting aside a decision only where it rests on an error of law or reflects arbitrary or capricious

-8-

decisionmaking." Oliveira v. Holder, 568 F.3d 275, slip op. at 3 (1st Cir. 2009) (citation omitted). Generally, a petitioner is entitled to file only one motion to reopen, which must be filed within ninety days of the date of entry of the Board's final decision. 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2). However, there are certain limited exceptions to the time and numerical limitations on motions to reopen if, inter alia, the motion (1) seeks rescission of an in absentia order of removal; (2) seeks to apply for asylum or withholding of removal based on changed country conditions; (3) is joined and agreed upon by all parties; or (4) is filed by DHS. 8 C.F.R. § 1003.2(c)(3). Chedid's case does not fall within any of 8 C.F.R. § 1003.2(c)(3)'s explicit regulatory exceptions to the time and numerical limitations on such motions. However, some courts have also recognized the availability of equitable tolling claims to surmount the time and numerical limitations on motions to reopen. See, e.g., Iavorksi v. INS, 232 F.3d 124, 129 (2d Cir. 2000) (time and numerical limitations); Lopez v. INS, 184 F.3d 1097, 1100 (9th Cir. 1999) (time limitations).

In a recent decision, we once again reserved the question of whether "the statutory provision limiting motions to reopen is subject to equitable tolling." Da Silva Neves v. Holder, 568 F.3d 41, 42 (1st Cir. 2009); see also Beltre-Veloz v. Mukasey, 533 F.3d 7, 11 (1st Cir. 2008) (reserving the question); Guerrero-Santana v.

Gonzalez, 499 F.3d 90, 93 (1st Cir. 2007) (same). We have also said that, even if equitable tolling were available to avoid the limitations on motions to reopen, the doctrine should be "sparingly invoked," Jobe v. INS, 238 F.3d 96, 100 (1st Cir. 2001) (en banc) (quotation marks omitted), and is "unavailable to a party who has failed to exercise due diligence, as the BIA found here." Da Silva Neves, 568 F.3d at 42 (citing Boakai v. Gonzales, 447 F.3d 1, 3 (1st Cir. 2006)). Thus, even assuming equitable tolling were available, we could only reach the merits of Chedid's ineffective assistance of counsel claim if the Board abused its discretion in finding that he had not exercised the "due diligence" required by our case law. It did not.

The Board's decision notes that "[n]early a year transpired from the time of the Board's denial of the first motion and the final motion." In fact, Chedid's second motion to reopen was filed on July 13, 2007, more than a year after his first motion to reopen was denied on June 15, 2006. As the Board pointed out, the only excuse given for this delay was the claim in Chedid's motion that he "searched for several months for an attorney willing to take his case and file a new motion to reopen," a vague explanation that the Board supportably concluded was insufficient to establish the requisite diligence. See Boakai, 447 F.3d at 3 (finding insufficient evidence of due diligence where petitioner acknowledged receipt of Board's earlier decision in March 2002,

-10-

current counsel was appointed in October 2002, and motion to reopen was not filed until April 2003, a year after the Board's final order was rendered).

This determination was not arbitrary or capricious. Chedid's affidavit provides no information whatsoever regarding the actions he took during the one-year period immediately following the Board's June 15, 2006 order, and neither his affidavit nor the accompanying motion provided any detail regarding his efforts to obtain new counsel. See Jobe, 238 F.3d at 101 n.8 (noting that alien "bears the burden of making a prima facie showing of entitlement to equitable tolling, and therefore of filling in any gaps in the record regarding whether his is a case warranting equitable relief"). Chedid's claims of ineffective assistance of counsel with respect to his first motion to reopen "cannot justify his failure to file the second motion to reopen within the prescribed period" or, failing that, to explain the "conspicuous . . . gap [that] exists between the denial of the petitioner's first motion to reopen and the filing of his second motion to reopen." Guerrero-Santana, 499 F.3d at 93.

Given Chedid's failure to demonstrate due diligence, there is no reason for us to consider whether to invoke equitable tolling based on Chedid's claim of ineffective assistance of counsel, or the merits of that ineffective assistance claim. See, e.g., id. at 93 ("The petitioner has failed to explain how his

-11-

previous counsels' shortcomings caused this failure to comply with the temporal deadline.  The merits of his ineffective assistance of counsel claim are, therefore, immaterial." (footnote omitted)).  Therefore, we need not review the Board's determination that Chedid failed to substantially comply with the Lozada requirements.  His dilatory pursuit of the second motion to reopen defeats his claim for relief.

**Petition denied.**