# United States Court of Appeals
## For the First Circuit

No. 11-1444

YUBELKYS APONTE,

Petitioner,

v.

ERIC H. HOLDER, JR., ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Circuit Judge</u>,
Souter, <u>Associate Justice</u>,[*]
and Thompson, <u>Circuit Judge</u>.

<u>Brian Monahan</u> on brief for petitioner.
<u>Tony West</u>, Assistant Attorney General, Civil Division, <u>David V. Bernal</u>, Assistant Director, Office of Immigration Litigation, and <u>Lindsay W. Zimliki</u>, Attorney, Office of Immigration Litigation, on brief for respondent.

June 21, 2012

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States sitting by designation.

**THOMPSON, Circuit Judge.** The case of Yubelkys Aponte is before this court for a second time. This go-around she petitions for review of a decision of the Board of Immigration Appeals (BIA) denying her request for a remand and dismissing her appeal from a final order of removal. Finding once again that the BIA failed to adequately address certain issues, we deny the petition in part, grant the petition in part, and remand.

## BACKGROUND

### i. Aponte's Arrival, Arrest, and Removal Charge

Yubelkys Aponte is a thirty-three year old native and citizen of the Dominican Republic. She was admitted to the United States as a Lawful Permanent Resident (LPR) on February 2, 1996. A few years later, in 1999, Aponte pled guilty to Criminal Possession of a Controlled Substance in the Fifth Degree in New York.

In the fall of 2003, Aponte came to the attention of the Department of Homeland Security (DHS) when she sought to reenter the United States at the Luis Muñoz Marin International Airport in San Juan, Puerto Rico. Shortly thereafter, on January 21, 2004, DHS served Aponte with a Notice to Appear. In it, DHS charged that Aponte was removable pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(II) because she had been convicted of a controlled substance violation.

### ii. The IJ Proceedings

Before the Immigration Judge (IJ), Aponte, who appeared with counsel, conceded removability.  However, Aponte requested a continuance so that her counsel could attempt to have her criminal conviction expunged.  The IJ accommodated this and additional requests and ultimately three years of continuances followed.  Aponte did not succeed in obtaining the expungement and, on June 4, 2007, the IJ called a stop to things and ordered Aponte removed.

### iii. The BIA Appeal

Aponte timely appealed the IJ's decision to the BIA.[1] Though she indicated no reason for the appeal, she noted that a brief would follow.  A few months later, the BIA mailed a briefing schedule to Aponte's then counsel.  The briefing schedule was mailed to the correct attorney, at the correct street address; however, it omitted the firm name (Ross & Associates), which Aponte's counsel had listed on her entry of appearance.  No brief from Aponte followed and so on November 18, 2008, the BIA summarily dismissed her appeal.  In response, Aponte's counsel (new attorney, same firm) filed a motion to reopen the removal proceedings, arguing that neither she nor Aponte received timely notice of the briefing schedule and that the BIA's failure to include the firm

---

[1] Because what happened next is set forth at length in a previous decision of this court, we offer the abridged version.  If the reader would like a more detailed recitation of these facts, see Aponte v. Holder, 610 F.3d 1 (1st Cir. 2010).

name in the mailing address constituted inadequate notice.  The BIA denied the motion to reopen finding insufficient information to establish inadequate notice.  Aponte petitioned this court for review.

### iv. The First Court of Appeals Petition

On June 18, 2010, we granted Aponte's petition.  See Aponte v. Holder, 610 F.3d 1, 2 (1st Cir. 2010) (Aponte I).  We held that the BIA abused its discretion by denying Aponte's motion to reopen in an inadequately reasoned decision - namely, the BIA failed to sufficiently dispose of the critical issue of whether Aponte was entitled to have her proceedings reopened based on inadequate notice of the briefing schedule. See id. at 5.  The particulars of the BIA's shortcoming in denying the motion to reopen included the absence of meaningful analysis, a failure to apply clear precedent, and misplaced findings.  See id.  The solution: we remanded the case for the BIA to provide Aponte with the opportunity to file a renewed motion to reopen and to decide that motion in accordance with our opinion. See id. at 7.  The remand came with some caveats to Aponte.  First, we noted that Aponte's evidence that the briefing schedule was not timely received - an affidavit completed by her attorney - was barely sufficient and the issue needed clarification. See id. Second, we pointed out that should the BIA decide to reopen, Aponte's ultimate "likelihood of succeeding on the merits might well be negligible"

-4-

as by all accounts she was having difficultly getting her conviction expunged.  Id.

### v. The BIA Remand

With Aponte's case before it again, the BIA, in accordance with our decision, allowed Aponte to file a new motion to reopen.  In the new motion, Aponte diversified her approach. Her first argument was familiar.  Aponte again argued that deficient notice of the briefing schedule meant that proceedings should be reopened so she could properly brief the merits of her appeal regarding removal.  In support, and presumably in response to the concerns we expressed about the first affidavit, Aponte's counsel submitted a new affidavit clarifying that neither she nor Aponte had any knowledge that a briefing schedule had been issued until they received the BIA's dismissal of the case.

Aponte then advanced a second and new argument.  She claimed that proceedings should be reopened, and her case remanded, because the attorney who represented her before the IJ provided ineffective assistance.  According to Aponte, she only discovered her former attorney's supposedly incompetent representation when her current attorney reviewed the transcripts of the 2004 to 2007 IJ hearings.  Aponte says this review occurred during the pendency of her previous petition to this court.  The gravamen of Aponte's complaint with counsel's performance is that at the time she conceded removability he did not request relief that she claims she

is prima facie eligible for - cancellation of removal, asylum, withholding of removal, and protection under the United Nations Convention Against Torture (CAT). Aponte claimed she was a candidate for cancellation of removal because she had never been convicted of an aggravated felony, she was admitted for permanent residence for at least five years, and, with her father's residency in the United States imputed to her, she met the seven year continuous residency requirement. Aponte asserted that she was eligible for asylum, withholding, and CAT protection based on her fear of returning to the Dominican Republic due to her membership in the "social group" of women "considered to violate violently enforced gender norms." And so Aponte requested that her case be reopened and remanded so that she could apply for these forms of relief.

The BIA took up Aponte's motion and issued a written decision on March 31, 2011. After briefly reciting the facts and procedural posture, the BIA indicated that it was reopening proceedings and vacating its previous orders. What the BIA's reasons for reopening were, we cannot say. Even though in Aponte I we suggested that the BIA might want to cast a critical eye on Aponte's notice deficiency arguments, it engaged in no analysis and simply granted the motion to reopen out of hand.

The BIA then proceeded to address the remand request and it reached the following conclusions. One, Aponte was not eligible

-6-

for cancellation of removal because she did not establish seven years of continuous residence as she could not properly impute her father's residency. Two, Aponte did not show that she is prima facie eligible for asylum, withholding, or CAT protection (no reasoning shored up this finding; more on this later). And finally, three, Aponte could not establish ineffective assistance of counsel because she had not demonstrated a reasonable probability of prejudice. That is, the BIA concluded that even if Aponte's counsel had requested the relief from removal that she now seeks, the end result would have been the same because Aponte was not eligible for such relief. For these reasons the BIA denied Aponte's request for a remand to the IJ and dismissed her appeal.

### vi. The Second Court of Appeals Petition

Aponte once again petitioned this court, this time seeking review of the BIA's March 31, 2011 order. In support of her petition, Aponte argues that the BIA's rulings were erroneous, that it abused its discretion in denying her request to remand without explanation, and that the lack of a remand infringed on her due process rights.[2]

---

[2] This is the last we will say of Aponte's due process claim. Aponte does not develop this argument, leaving the impression that it was evoked solely for the purpose of circumventing our jurisdictional constraints. This perfunctory treatment waives the argument. See Rodríguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir. 2011).

**STANDARD OF REVIEW**

Aponte's motion below was styled as a motion to reopen with a request for a remand included in it.  The BIA granted the motion to reopen without any analysis and focused on the request for a remand in its decision.  Whether classified as a motion to reopen or a request for a remand, the "nomenclature does not affect the applicable legal framework."  Mariko v. Holder, 632 F.3d 1, 7 (1st Cir. 2011).  Because Aponte "seeks to have the BIA return an appealed case to the IJ for further proceedings based on newly available information," we treat her quest for relief as a motion to reopen.  Id.

We review the denial of a motion to reopen for abuse of discretion.  See Chedid v. Holder, 573 F.3d 33, 36 (1st Cir. 2009).  We set aside the "decision only where it rests on an error of law or reflects arbitrary or capricious decision making."  Id. (internal quotation marks omitted).  The BIA's legal conclusions are evaluated de novo, with deference given "to the BIA's reasonable interpretations of statutes and regulations falling within its purview."  Matos-Santana v. Holder, 660 F.3d 91, 93 (1st Cir. 2011) (internal quotation marks omitted).

Our review is subject to an additional restriction, this one jurisdictional in nature.  Because Aponte was found removable based on a conviction for a controlled substance violation, our review (as it was in Aponte I) is limited to constitutional claims

-8-

and questions of law.  See 8 U.S.C. § 1252(a)(2)(C)-(D); see also Larngar v. Holder, 562 F.3d 71, 75 (1st Cir. 2009).

**ANALYSIS**

**i. Cancellation of Removal**

A deportable alien is eligible for cancellation of removal if the alien: (1) has been lawfully admitted for permanent residence for at least five years; (2) has resided in the United States continuously for seven years after being admitted in any status; and (3) has not been convicted of an aggravated felony. See 8 U.S.C. § 1229b(a)(1)-(3).  Relevant for our purposes is the so-called stop-time rule, which provides that an alien's period of continuous residence is deemed to end when she is served with a notice to appear or is convicted of certain criminal offenses, including a controlled substance violation.  See id. § 1229b(d)(1); see also Peralta v. Gonzales, 441 F.3d 23, 24 (1st Cir. 2006).  The only debate here is whether Aponte met the seven year continuous residency requirement of § 1229b(a)(2).  Aponte raises two issues of law with respect to the BIA's conclusion that she did not.  We address each in turn.

Aponte's first argument is that her 2004 placement into removal proceedings - as opposed to her 1999 criminal conviction as found by the BIA - stopped time for purposes of calculating her

-9-

continuous residency.[3]  This claim is easily disposed of.  Aponte was lawfully admitted into the United States in 1996.  She was convicted in 1999 of a controlled substance violation, approximately three years after she was admitted.  Aponte was served with a notice to appear in 2004, approximately eight years after she was admitted.  The stop-time rule explicitly provides that the "earliest" of either of these two happenings (service with a notice to appear or conviction of a controlled substance violation) shall cause a period of continuous residency to end.  8 U.S.C. § 1229b(d)(1).  Aponte's criminal conviction was earlier.  Therefore her period of continuous residency ended after three calendar years, and for reasons to follow, short of satisfying the seven year continuous residency requirement.  This takes us to argument number two.

Aponte claims that even if the stop-time rule applies, she still has seven years of continuous residence.  Specifically, according to Aponte, her father, who is now a United States citizen, entered the United States in 1988.  She asserts that his years in the United States should be imputed to her for purposes of satisfying the requirement.  She made the same argument to the BIA.  The BIA disagreed, relying on its precedent Matter of Ramirez-

---

[3] Aponte does not reach this conclusion by engaging in any factual or legal analysis.  She gets there by simply ignoring the fact that her criminal conviction plays any role in the continuous residency equation.  It is a spurious argument.

-10-

Vargas, 24 I. & N. Dec. 599 (B.I.A. 2008).[4]  To this court, Aponte asserts that Ramirez-Vargas is an "erroneous ruling of law" that we should reverse.  In its stead, Aponte urges us to adopt a Ninth Circuit case, Cuevas-Gaspar v. Gonzales, 430 F.3d 1013 (9th Cir. 2005), which she says supports her claim for imputation of her father's residency.[5]  We decline the invitation.

Following two circuits diverging from the path paved by the Ninth Circuit in Cuevas-Gaspar, see Deus v. Holder, 591 F.3d 807, 811-12 (5th Cir. 2009)(finding reasonable the BIA's refusal to allow an alien who entered the United States as a minor to impute her parent's residency in order to satisfy the continuous residency requirement), Augustin v. Attorney General of the United States, 520 F.3d 264, 270 (3d Cir. 2008)(same), the Supreme Court recently

---

[4]In Ramirez-Vargas, an alien seeking cancellation of removal could not meet the seven year continuous residency requirement of § 1229b(a)(2).  See 24 I. & N. Dec. at 599-600.  The alien sought to impute his father's residency in the United States, in particular the years he had resided with his father as an unemancipated minor.  See id. at 600.  The BIA did not allow it, relying on its earlier holding In re Escobar, in which it had found no "logical or legal basis to consider the residence of a minor alien's parents in determining whether the minor acquired the necessary years of residence," 24 I. & N. Dec. 231, 233 (B.I.A. 2007).  See Ramirez-Vargas, 24 I. & N. Dec. at 600-01.

[5]  In Cuevas-Gaspar, the Ninth Circuit Court of Appeals concluded that, for purposes of establishing the seven year continuous residency requirement, "a parent's admission for permanent residence status is imputed to the parent's unemancipated minor children residing with the parent."  430 F.3d at 1029.

-11-

took up this parental imputation issue, <u>Holder</u> v. <u>Martinez Gutierrez</u>, 132 S.Ct. 2011 (2012).[6]

In <u>Martinez Gutierrez</u>, the Supreme Court considered two consolidated cases from the Ninth Circuit involving aliens seeking cancellation of removal. The first alien, Carlos Martinez Gutierrez, illegally entered the United States in 1989 at the age of five with his parents. <u>See</u> <u>id.</u> at 2016. Martinez Gutierrez's father gained LPR status a short time later but Martinez Gutierrez did not do so until 2003. <u>See</u> <u>id.</u> Two years later he was caught smuggling aliens across the border and removal proceedings were instituted. <u>See</u> <u>id.</u> The second alien, Damien Sawyers, having been preceded by his lawfully admitted mother by six years, legally entered the United States as a LPR in 1995 at the age of fifteen. <u>See</u> <u>id.</u> at 2017. After a 2002 drug conviction, removal proceedings were instituted. <u>See</u> <u>id.</u>

Both aliens sought cancellation of removal; however, neither met the seven year continuous residency requirement of § 1229b(a)(2) and Martinez Gutierrez also could not satisfy the five year lawful permanent residence requirement of § 1229b(a)(1). <u>See</u> <u>Martinez Gutierrez</u>, 132 S.Ct. at 2016, 2017. The aliens tried to get around this by seeking, as Aponte does, to impute their parents' years in the United States. <u>See</u> <u>id.</u> In both cases, the

---

[6] This decision was issued after the BIA's decision and after the parties had briefed this issue to this court.

BIA, relying on In re Escobar, declined to impute the parents' years. See Martinez Gutierrez, 132 S.Ct. at 2016, 2017. On petitions for review, the Ninth Circuit Court of Appeals remanded the cases to the BIA with instructions to reconsider based on Cuevas-Gaspar's most recent offspring, Mercado-Zazueta v. Holder, 580 F.3d 1102 (9th Cir. 2009). See Martinez Gutierrez, 132 S.Ct. at 2017. The government sought certiorari. See id.

The end result: the Supreme Court reversed the Court of Appeals. See id. Applying Chevron deference,[7] it held that the BIA's conclusion that an alien must meet § 1229b(a)(1) and (2)'s requirements on his own, "without counting a parent's years of residence or immigration status" was "based on a permissible construction of the statute." Martinez Gutierrez, 132 S.Ct. at 2017. The Court reasoned that such an approach is in accord with the statute's text, which "does not mention imputation, much less require it" and which calls for the single individual alien to meet the cancellation prerequisites. Id.

The Court went on to dispose of assorted arguments advanced by the aliens. We highlight those that mirror Aponte's contentions. First, the Court rejected the aliens' statutory

---

[7] Aponte claims that Chevron deference is not warranted in her case because the BIA offered no rational explanation for its decision. We need not get into the viability of Aponte's premise. It suffices to note that the BIA adequately explained why Aponte could not impute her father's residency by relying on its precedent and explaining why the cases Aponte cited were distinguishable.

-13-

history argument, specifically their reliance on the fact that some courts, including the BIA, read § 1229b(a)'s predecessor - the former § 212(c) of the Immigration and Nationality Act (INA) - as allowing imputation of a parent's domicile.  See Martinez Gutierrez, 132 S.Ct. at 2018.  The Supreme Court did not see the significance.  It noted that Congress eliminated the term domicile, which was contained in § 212(c), from § 1229b(a) and as such the principles of congressional ratification did not apply.  See Martinez Gutierrez, 132 S.Ct. at 2018.

Another claim rejected by the Supreme Court was that the INA's purposes demand imputation.  See id. at 2019.  While recognizing that the INA is informed by goals of providing relief to those with strong ties to the Unites States and promoting family unity, the Court noted that these are not the INA's only goals. See id.  The Court concluded that it could not read a silent statute as requiring imputation "just because that rule would be family-friendly."  Id.

The Court was also not persuaded by the aliens' attempt to classify the BIA's approach as inconsistent with its practice of accepting imputation under similar statutory provisions.  See id. It explained that the reason behind these divergent results is that the BIA imputes matters involving an alien's state of mind (e.g., knowledge of inadmissability or abandonment of LPR status) but not

objective conditions or characteristics (e.g., residence or LPR status).  See id. at 2020.

The Supreme Court has made our job easy.  Not only is Martinez Gutierrez controlling, but its reasoning is sound.  The BIA's rebuff of Aponte's bid to impute her father's years in the United States was based on a permissible construction of § 1229b(a).[8]  Without the benefit of her father's years in the United States, Aponte fell well short of the seven years of continuous residence required for cancellation of removal.  As such, the BIA did not abuse its discretion in denying Aponte's request for a remand and dismissing her appeal based on her failure to establish eligibility for cancellation of removal.

### ii. Asylum, Withholding, and CAT Protection

The other reason the BIA gave for disposing of Aponte's remand request and appeal was because it found that Aponte did not demonstrate prima facie eligibility for asylum, withholding of removal, and CAT protection.  Precisely, the BIA stated: "However, [Aponte's] most recent submissions to the Board, including her brief, do not present sufficient arguments demonstrating that she is prima facie eligible for asylum, withholding, or protection

---

[8] It is worth noting that the BIA, without having Martinez Gutierrez to look to, issued an interpretation that was in accord with its own precedent, Ramirez-Vargas, which it was obligated to respect.  See Mendez-Barrera v. Holder, 602 F.3d 21, 26 (1st Cir. 2010) (stating that "[a]n administrative agency must respect its own precedent, and cannot change it arbitrarily and without explanation, from case to case").

-15-

under the Convention Against Torture."  It then added: "Further, a review of the asylum application, and the very limited evidence attached to the asylum application, do not demonstrate . . . that the respondent is now prima facie eligible for asylum, withholding or protection under the Convention Against Torture." Unfortunately, as we were in Aponte I, we are faced with an inadequately reasoned decision.

Here the BIA simply stated that Aponte's submissions did not demonstrate prima facie eligibility.  It made no findings, relied on no case law, and engaged in no analysis.  Moreover, it offered up no rationale for the decision it reached (e.g., Aponte did not demonstrate that she is a member of a legally cognizable social group, or Aponte cannot prove that it is more likely than not that she will be tortured).[9]  While we suspect the BIA's compact decision was a direct result of Aponte's own less than thorough request for relief, and we are not suggesting that the BIA should have dedicated pages upon pages to hashing out its merits, we cannot turn a blind eye to the inadequacy of the decision.

First, although Aponte's request was not the most perfectly formulated, and the bulk of her attention went to her cancellation bid, she gave the BIA enough to warrant a merits-based decision.  Aponte claimed membership with a supposed social group,

---

[9] These are just examples.  We are not offering any opinion as to whether such reasons would carry the day.

articulated a fear of returning to the Dominican Republic, and submitted a completed application for asylum and withholding with an attached affidavit and articles about the Dominican Republic's political and social climate. This is not the stuff of waiver, and notably the BIA did not say otherwise.

Second, we have a jurisdictional wrinkle. In <u>Larngar</u> v. <u>Holder</u>, 562 F.3d 71 (1st Cir. 2009), we were tasked with deciding whether the BIA erred when it denied the petitioner's motion to reopen based, in part, on his failure to establish prima facie eligibility for CAT protection. As it is here, our jurisdiction in <u>Larngar</u> was limited to legal and constitutional issues because, in that case, the petitioner had been convicted of an aggravated felony. <u>See</u> <u>id.</u> at 75. In debating the existence of jurisdiction, we explained that there is a question (never explicitly answered by this court) as to whether the BIA's determination that a petitioner has failed to make out a prima facie case for substantive relief is typically legal or factual in nature. <u>See</u> <u>id.</u> at 79-80. We hesitated and, in the end, declined to resolve the question because the BIA's determination that the petitioner had not established prima facie eligibility for relief was too summary.[10] <u>See</u> <u>id.</u> at 80. Instead we remanded. <u>See</u> <u>id.</u> Here the BIA's decision is

_____

[10] The BIA remarked: "the respondent's filing is insufficient to support reopening on the likelihood of it being found 'more likely than not' that the respondent would be tortured at the hands of a government official if returned to Liberia." <u>Larngar</u>, 562 F.3d at 79.

equally summary, if not more so.  Our ability to answer the jurisdictional question, let alone embark on a meaningful inquiry about the merits, is severely impacted.  We do not know whether the BIA's decision was based on a legal determination, a factual determination, or something in between.  Larngar is analogous and the route taken there makes sense here.

Finally, and most fundamentally, we do not review inadequately reasoned decisions.[11]  As we have said, "it is extremely problematic for appeals courts to assess an exercise of the BIA's discretion absent a reasonably clear signal as to the precise rationale for its exercise of discretion." Onwuamaegbu v. Gonzales, 470 F.3d 405, 412 (1st Cir. 2006).  That is exactly the problem here.  The BIA's treatment was so summary as to constitute arbitrary and capricious decision making. See Chedid, 573 F.3d at 36.

Accordingly, we conclude that the BIA abused its discretion when it decided that Aponte failed to make out a prima facie case for asylum, withholding, and CAT protection, and we set aside the decision.  See id. at 36-37; see also Onwuamaegbu, 470 F.3d at 412.  We remand to the BIA with instructions to issue an

_____

[11] We have circumvented this rule when the IJ or BIA's grounds were implicit or the basic rationale could be gleaned.  See Wiratama v. Mukasey, 538 F.3d 1, 6-7 (1st Cir. 2008); Waweru v. Gonzales, 437 F.3d 199, 203-204 (1st Cir. 2006).  This is not the situation we are faced with here.  We have no inkling why the BIA decided what it did.

order of clarification explaining the rationale behind its determination that Aponte did not establish prima facie eligibility for asylum, withholding of removal, and CAT protection.

### iii. Ineffective Assistance of Counsel

Aponte's motion to reopen was based, in part, on her claim that the attorney who represented her before the IJ provided ineffective assistance. The supposed deficiency in the attorney's representation was his failure to request cancellation and withholding of removal, asylum, and CAT protection. The BIA did not see things the same way, holding that Aponte's ineffective assistance of counsel claim failed because she did not establish prejudice since she is not prima facie eligible for this relief. See Zeru v. Gonzales, 503 F.3d 59, 72 (1st Cir. 2007) (stating that "to succeed on an ineffective assistance of counsel claim, petitioners must show 'a reasonable probability of prejudice' resulting from their former representation"). As we said, the BIA's decision as to Aponte's prima facie entitlement to asylum, withholding, and CAT protection was inadequate. Because the question of whether Aponte is eligible for this relief forms the bedrock of the BIA's ineffective-assistance-of-counsel conclusion, we cannot properly resolve it on this record.

### CONCLUSION

With respect to the BIA's conclusion that Aponte is not eligible for cancellation of removal, we deny Aponte's petition for

review and affirm the decision of the BIA. As for the BIA's determination that Aponte did not demonstrate that she is prima facie eligible for asylum, withholding of removal, and CAT protection, we grant Aponte's petition for review and remand to the BIA for an order of clarification consistent with this opinion. Finally, regarding the BIA's finding that Aponte has not established ineffective assistance of counsel, we grant the petition for review and remand. No order of clarification is needed with respect to this issue; we only remand as resolution of this and the prima facie issue are inextricably tied.