[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12967
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cr-00100-SLB-CSC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES CALVIN TALLEY, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(January 11, 2021)

Before MARTIN, LUCK, and FAY, Circuit Judges.

PER CURIAM:

James Calvin Talley, Jr. appeals his convictions and sentences for possession of methamphetamine with the intent to distribute it and possession of a firearm as a convicted felon. We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2016, Drug Enforcement Administration agents stopped an individual in Texas who was transporting one hundred pounds of marijuana to Talley. The individual agreed to cooperate with the agents and completed a controlled delivery to Talley's home. When the cooperating individual got to Talley's house, agents saw Talley get into the delivery car and drive it, with the marijuana still inside, to the home of Richie Murphy. When Talley arrived at Murphy's home, the agents arrested him and Murphy, who was home at the time.

With Murphy's permission, the agents searched his home. Inside, they found three and a half pounds of methamphetamine, two handguns, approximately seven pounds of marijuana, drug paraphernalia, plastic bags, and $22,526 in cash.

Then, with Talley's wife's consent, the agents searched Talley's home and shed. In Talley's shed they found digital scales, receipts, and "money logs." In Talley's home they found $50,192 in cash, marijuana, and a ledger containing dates,

quantities of money, and coded language.  They also found a locked safe containing two firearms under Talley's bed in the master bedroom.

Talley was indicted for possessing methamphetamine with intent to distribute it, in violation of 21 U.S.C. section 841(a)(1) and 18 U.S.C. section 2, and possessing a firearm as a convicted felon, in violation of 18 U.S.C. section 922(g)(1).[1]  Here are the parts of his trial and sentencing hearing relevant to this appeal.

*Testimony about ownership of the firearms*

Agent Bryan Alfutis was one of the Drug Enforcement Administration agents who searched Talley's home.  At Talley's trial, he testified that the agents found the firearms in a locked safe underneath the bed in Talley's bedroom.  Agent Alfutis testified that Talley's wife told him where the key to the safe was.  On redirect examination, the government asked if Talley's wife told him who owned the guns. Agent Alfutis responded, without objection, "[Talley's wife] told me [the firearms] were her husband[']s."

---

[1] Talley was also indicted for, and convicted of, possessing marijuana with intent to distribute it, in violation of 21 U.S.C. section 841(a)(1), and using a communication facility in facilitation of a drug trafficking offense, in violation of 21 U.S.C. section 843(b).  Talley has not appealed his convictions and sentences for either of these counts.

*Testimony about "Hector" being Talley's methamphetamine source*

Agent Alfutis also testified that the ledger found in Talley's shed used coded language to describe drug sales. He testified that it was typical in his experience for drug traffickers to keep transaction records. Agent Alfutis testified, without objection, that the ledger corroborated the Drug Enforcement Administration's investigation because "[o]ne of the entries [had] the name Hector on it and several dates and quantities of money. Hector [was] the name, through [the] investigation that continued on and after that night, that [the Drug Enforcement Administration had] identified as a methamphetamine source or supplier for Mr. Talley."

*Jury instructions*

The district court, without objection, instructed the jury on the felon in possession of a firearm charge that:

> The defendant can be found guilty of the offense charged in Count 3 only if all of the following facts are proved beyond a reasonable doubt. First, that the defendant knowingly possessed a firearm in or affecting interstate commerce as charged. And second, that before the defendant possessed the firearm, he had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year. That is a felony offense.

*Motions for judgment of acquittal*

After the government rested its case, Talley moved for a judgment of acquittal on the felon in possession of a firearm and possession with intent to distribute methamphetamine counts because the evidence was insufficient to support

4

conviction.  As to the firearm count, Talley argued there was insufficient proof that he "exercise[d] dominion and control" over the guns in the safe.  And as to the methamphetamine count, Talley argued that Murphy's testimony about the methamphetamine was "incredible as a matter of law."  The district court denied Talley's motion on the methamphetamine count, but reserved ruling on the firearm count.  After the trial, the district court denied the reserved motion because the evidence was sufficient for a jury to find that Talley controlled the home and bedroom where the firearms were found.

### *Allen* charge

Five hours into the jury's deliberation, the jury asked the district court four questions.  The jury asked:  (1) if it had to be unanimous on every count; (2) whether a lack of unanimity on every count would "void everything"; (3) whether agreement on only three of four counts would "void everything"; and (4) for a repetition of the jury instruction for possession.

After reading the jury's questions, the district court asked counsel whether it should give an Allen[2] charge.  Talley objected, arguing that an Allen charge was premature because the jury had not affirmatively indicated that it could not reach a

[2] Allen v. United States, 164 U.S. 492 (1896).

verdict and because the language in the pattern <u>Allen</u> charge that "[t]here's no reason to believe that the case will be tried again by either side that has been exhaustively tried before you," and "another trial would increase the cost [to] both sides," created unfairness because it suggested the jury would have to "do [the trial] again."  The district court agreed to omit this language from the pattern <u>Allen</u> charge.  The district court then told the jury that it could return a unanimous verdict on any of the counts and that its lack of unanimity on other counts would have no effect, and repeated the possession instruction.  At Talley's request, the district court gave the jury additional time to deliberate and did not give the modified <u>Allen</u> charge.

After more time passed, the jury returned and reported that it had only reached a verdict on three of the four counts.  The district court confirmed that the jury could not reach a verdict on the final count, and then gave the modified <u>Allen</u> charge to the jury.  The jury later returned a guilty verdict on all counts.

*Sentencing*

The presentence investigation report calculated Talley's base offense level at 34 under guideline section 2D1.1(a)(5) and (c)(1), then added two levels under section 2D1.1(b)(1) because Talley possessed a firearm during the offense and two additional levels under section 3B1.1(c) because Talley had a supervisory role.  This resulted in a total offense level of 38.  But Talley's offense level was set at 42 because his two prior felony drug convictions made him a career offender under

section 4B1.1(a) and (b)(1). The presentence investigation report also assigned Talley a criminal history category of VI because he was a career offender. A total offense level of 42 and a criminal history category of VI would ordinarily result in an advisory guideline range of 360 months to life. However, because the methamphetamine count carried a mandatory minimum life sentence if a defendant had two or more prior felony drug convictions, and Talley had two prior felony drug convictions, the report determined that Talley's guideline range became life pursuant to section 5G1.1(a). See 21 U.S.C. § 841(b)(1)(A) (2010) ("[If] any person commits a violation of [section 841(b)(1)(A)] . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . .").

Talley objected to the presentence investigation report, arguing that there was no evidence that Talley knew Murphy had firearms in the stash house. He also objected to the use of his prior convictions to impose the mandatory life sentence because the indictment did not charge, and the jury did not find, that he committed the prior offenses. The district court overruled Talley's objection to the section 2D1.1(b)(1) firearm enhancement because there were firearms found in Murphy's stash house and under Talley's bed. The district court also overruled Talley's objection to the use of his prior convictions because Almendarez-Torres v. United States, 523 U.S. 224 (1998) held that they may be used to impose a mandatory

7

minimum sentence even though the prior convictions were not charged in the indictment or found by the jury.

The district court then found that Talley's offense level was 42 and his criminal history category was VI because Talley was a career offender, and that the guideline range was life because section 841(b)(1)(A) carried a mandatory minimum life sentence. The district court sentenced Talley to life for the possession with intent to distribute methamphetamine count, based on the mandatory minimum, and 120 months for the felon in possession of a firearm count.

## STANDARDS OF REVIEW

We review de novo the sufficiency of the evidence supporting a conviction and consider "the evidence in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." United States v. Frazier, 605 F.3d 1271, 1278 (11th Cir. 2010) (internal quotation marks omitted). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." United States v. Emmanuel, 565 F.3d 1324, 1333 (11th Cir. 2009) (internal quotation marks omitted). However, where a defendant challenges the sufficiency of the evidence on a ground not argued below, we review that new ground for plain error. United States v. Hunerlach, 197 F.3d 1059, 1067–68 (11th Cir. 1999).

Under plain error review, we may not correct an error unless "there is: (1) error, (2) that is plain, and (3) that affects substantial rights." United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). If all three conditions are met, we may only correct the forfeited error "if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. An error affects a defendant's substantial rights if there is a reasonable probability that the error affected the outcome of the district court proceedings. Id. at 1299; see also United States v. McLellan, 958 F.3d 1110, 1119 (11th Cir. 2020) ("[F]or an error to have affected a defendant's substantial rights, there must be 'a reasonable probability that, but for the error,' the outcome of the proceeding would have been different.") (quoting Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016)) (alterations adopted). We review the entire record to determine whether an error affected a defendant's substantial rights. United States v. Reed, 941 F.3d 1018, 1021 (11th Cir. 2019).

We review de novo whether testimony violates the Confrontation Clause. United States v. Cooper, 926 F.3d 718, 730 (11th Cir. 2019). However, where the defendant does not object to the admission of testimonial statements at trial, we review their admission for plain error. United States v. Arbolaez, 450 F.3d 1283, 1291 (11th Cir. 2006).

We also review de novo whether the district court misstated the law in its jury instructions. United States v. Joseph, 709 F.3d 1082, 1093 (11th Cir. 2013). However, "unpreserved objections to jury instructions are reviewed for plain error." Id.

Finally, we review a decision to give an Allen charge for abuse of discretion. United States v. Brown, 934 F.3d 1278, 1294 (11th Cir. 2019).

## DISCUSSION

Talley argues that the district court erred by:  (1) failing to instruct the jury that it could only find him guilty of being a felon in possession of a firearm if he knew he was a felon, as required by United States v. Rehaif, 139 S. Ct. 2191 (2019); (2) denying his motion for judgment of acquittal on the felon in possession of a firearm count; (3) failing to exclude his wife's testimony that the guns were his, in violation of the Confrontation Clause; (4) failing to exclude Agent Alfutis's testimony that "Hector" was Talley's source for the methamphetamine, in violation of the Confrontation Clause; (5) giving the jury the Allen charge; (6) imposing a mandatory life sentence under 21 U.S.C. section 841(b)(1)(A) where the jury did not find beyond a reasonable doubt that he had been convicted of two prior drug felonies; and (7) incorrectly applying enhancements in calculating his advisory guideline range.  We address each argument below.

*Rehaif error*

Talley contends that (1) the district court erred by failing to instruct the jury that it had to find beyond a reasonable doubt that Talley knew he was a convicted felon, as required by Rehaif, and (2) the evidence was insufficient to establish that he knew of his felon status. Talley raises these arguments for the first time on appeal.

To support a conviction under 18 U.S.C. section 922(g), the government had to prove that Talley "knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." Rehaif, 139 S. Ct. at 2194. But "where the record clearly demonstrates that it would be implausible for the defendant to not have been aware of his felony status," a Rehaif error does not meet the plain error test because it "does not affect substantial rights." McLellan, 958 F.3d at 1119 (citing Reed, 941 F.3d at 1022).

Here, as in McLellan, the record clearly shows that Talley was aware of his felon status. At trial, the government introduced, without objection, the judgments from Talley's previous felony convictions. One of the judgments was signed by Talley next to a checked box that said, "Felony." Talley had two prior felony convictions, and he served four years in prison because of these convictions. See Reed, 941 F.3d at 1021 (finding no plain error under Rehaif where the defendant had served eighteen years in prison for a prior felony conviction). As in McLellan, it was implausible that Talley would not have known of his felon status. See 958 F.3d

11

at 1119.  Talley has not shown that, but for the Rehaif error, there would be a reasonable probability of a different outcome at trial.

*Sufficiency of the evidence – felon in possession count*

Talley also contends that, without his wife's statement that he owned the firearms found in the safe under his bed, the evidence was insufficient that he possessed the firearms.  We conclude that, even without his wife's statement, there was sufficient evidence to support his constructive possession of the firearms.

Under 18 U.S.C. section 922(g), it is unlawful for certain classes of individuals, including felons, to "possess in or affecting commerce, any firearm . . . ."  See Rehaif, 139 S. Ct. at 2194.  "Possession of a firearm may be either actual or constructive."  United States v. Perez, 661 F.3d 568, 576 (11th Cir. 2011).  "Constructive possession of a firearm exists when a defendant does not have actual possession but instead knowingly has the power or right, and intention to exercise dominion and control over the firearm."  Id.  It requires only "knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession even though he does not have actual personal dominion."  United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996) (internal quotation marks and citations omitted).  "[C]onstructive possession . . . may be shown circumstantially through evidence of ownership, dominion, or control over the premises on which the [contraband] is located."  United States v. Cochran, 683 F.3d

1314, 1320 (11th Cir. 2012). And constructive possession may be sole or joint. Cochran, 683 F.3d at 1320; United States v. Mieres-Borges, 919 F.2d 652, 657 (11th Cir. 1990) ("Even constructive possession need not be exclusive, but may be shown circumstantially through evidence of ownership, dominion, or control over the premises on which the [contraband] is located.").

A jury may infer constructive possession if a firearm is found in the defendant's home. United States v. Smith, 591 F.2d 1105, 1107 (5th Cir. 1979) (holding that "dominion and control over [the defendant's] residence, in which the guns were found, is a sufficient basis for the jury's inference of constructive possession"); Mieres-Borges, 919 F.2d at 657 (holding that "evidence of ownership, dominion, or control over the premises on which the [contraband] is located" is sufficient to infer constructive possession). We have also held that a jury may infer constructive possession of firearms found in a glove compartment of a car or in an adjoining hotel room. See, e.g., United States v. Howard, 742 F.3d 1334, 1341 (11th Cir. 2014) (holding that the defendant had constructive possession of a firearm found inside the glove compartment where defendant had been in the driver's seat just before search of vehicle); United States v. Riggins, 563 F.2d 1264, 1266 (5th Cir. 1977) (holding that the defendant had constructive possession of contraband in a hotel room when a drug deal was conducted between two others in the adjoining bathroom).

13

Here, based on the other evidence, a jury could find that Talley constructively possessed the firearms. First, the firearms were in his home, where Talley lived with his wife and daughter and where he exercised ownership, dominion, and control. See Smith, 591 F.2d at 1107 (permitting inference of constructive possession for firearms found in defendant's home). Second, the safe holding the firearms was in his bedroom, which was sufficient to permit the jury to infer Talley's dominion and control over it. See, e.g., United States v. Ochoa, 941 F.3d 1074, 1105 (11th Cir. 2019) (determining that there was sufficient evidence that the defendant constructively possessed ammunition because evidence showed the defendant exercised dominion and control over the bedroom where the ammunition was found); United States v. Molina, 443 F.3d 824, 830 (11th Cir. 2006) (determining that there was sufficient evidence that the defendant constructively possessed a firearm "[b]ecause the firearm was found in [the defendant's] bedroom"). And, much like Howard, where we held that a weapon in the glove compartment of a defendant's car was sufficient to establish constructive possession, a jury could infer that Talley had access to, and could exercise control over, the firearms inside the safe that was under his bed. See 742 F.3d at 1341; see also United States v. Gonzalez, 71 F.3d 819, 835 (11th Cir. 1996) ("[Defendant's] presence in the [car], with ready access to the weapon later discovered in the glove compartment, was sufficient to prove that he possessed the [firearm] . . . irrespective of the fact that the

14

[firearm] belonged to a third person."), abrogated on other grounds by Arizona v. Gant, 556 U.S. 332, 335 (2009).

*Confrontation Clause – Talley's wife's testimony about his ownership of the firearms*

Talley contends that the admission of his wife's testimony that the guns were his violated his rights under the Confrontation Clause. He raises this argument for the first time on appeal.

Talley's Confrontation Clause argument fails on the third prong of the plain error test because, as discussed above, there was sufficient evidence for the jury to infer Talley's constructive possession without his wife's statement. Thus, Talley hasn't shown a "reasonable probability that, but for the error, the outcome of the proceeding would have been different." McLellan, 958 F.3d at 1119 (internal quotation marks omitted).

*Confrontation Clause – Agent Alfutis's testimony about "Hector"*

Talley contends that Agent Alfutis's testimony about "Hector" being Talley's source for the methamphetamine violated the Confrontation Clause. Talley argues that without this testimony the non-hearsay evidence was insufficient that he possessed the methamphetamine with the intent to distribute it. Talley makes this argument for the first time on appeal.

The evidence, even without Agent Alfutis's testimony, was more than sufficient for the jury to conclude that Talley possessed the methamphetamine found

15

in Murphy's home.  At trial, Talley's cellmate testified that Talley told him about the pending case and said, "you can get a kilo [of methamphetamine] for $8,000, and it's easy to double your money."  Talley's cellmate also testified that Talley said he had taken the marijuana to a "stash house" owned by a "white man with no legs." Murphy, the owner of the house where the drugs were found, had one leg, and testified that his home was Talley's "stash house," that the operation "grew into methamphetamine," and that Talley would "bring [the methamphetamine] into the house, and then [Murphy] would stash it." Murphy testified that he and Talley would break down the methamphetamine into salable sizes, and then Talley would "distribute it."  In other words, the testimony was that Talley delivered the methamphetamine to Murphy, Talley occasionally "broke [it] down," and Talley actually "distribute[d] it."

Because, even without Agent Alfutis's testimony, the evidence was sufficient to convict Talley of possessing methamphetamine with intent to distribute it, there was no "reasonable probability that, but for the error, the outcome of the proceeding would have been different." McLellan, 958 F.3d at 1119 (internal quotation marks omitted).

16

*Allen* Charge

Talley next argues that (1) <u>Allen</u> charges are inherently coercive and violate the Sixth Amendment, and (2) the district court's <u>Allen</u> charge coerced a verdict at his trial.

Although Talley argues that <u>Allen</u> charges are inherently coercive, we have not adopted a per se rule and have approved the use of the pattern <u>Allen</u> charge on several occasions. <u>United States v. Woodard</u>, 531 F.3d 1352, 1364 (11th Cir. 2008); <u>United States v. Dickerson</u>, 248 F.3d 1036, 1050 (11th Cir. 2001). "We will find that a district court has abused its discretion in giving a modified <u>Allen</u> charge only if the charge was inherently coercive." <u>Woodard</u>, 531 F.3d at 1364. "In assessing whether the charge was coercive, we consider the language of the charge and the totality of the circumstances under which it was delivered," including "whether the court conducted a full poll of the jury before giving the charge and the amount of time between the delivery of the charge and the return of the jury's verdict." <u>Id.</u>

Here, the district court gave the approved pattern <u>Allen</u> charge, save for the modifications that Talley himself requested. And the totality of the circumstances demonstrated that the district court's decision to give an <u>Allen</u> charge was not coercive. The facts here closely mirror those in <u>United States v. Bush</u>, where we held that an <u>Allen</u> charge was not coercive where it was given after four hours of deliberation, and where the jury said that it was "at a stalemate." 727 F.3d 1308,

17

1320–21 (11th Cir. 2013).  Here, the jury deliberated for more than five hours; the district court waited before giving the Allen charge; it sent the jury back to continue deliberations after discussion with counsel; it then confirmed that the jury was at a stalemate; and the charge it ultimately gave was identical to the pattern Allen charge except for the minor modification requested by Talley.  Under these circumstances, we do not find that the district court abused its discretion in giving an Allen charge.

*Imposing mandatory minimum sentence without a jury finding of prior convictions*

Talley contends that the district court erred in sentencing him under 21 U.S.C. section 841(b)(1)(A) to a mandatory minimum life sentence based on his two prior felony drug convictions but without a jury finding that he was previously convicted. At the time of Talley's sentencing, section 841 provided that if "any person commits a violation of [section 841(b)(1)(A)] . . . after two or more prior convictions for a felony drug offense have become final, such person shall be sentenced to a mandatory term of life imprisonment without release . . . ."    21 U.S.C. § 841(b)(1)(A) (2010).  As Talley concedes, the Supreme Court held in Almendarez-Torres that prior convictions may be used to impose a mandatory minimum sentence even though the prior convictions were not charged in the indictment or found by the jury.  523 U.S. at 226–27.  Because Almendarez-Torres has not been overruled, we are bound by it.  See United States v. James, 642 F.3d 1333, 1343 (11th Cir. 2011) (explaining that we are bound by Almendarez-Torres until the Supreme Court

18

explicitly overrules it). The district court found that Talley had two prior felony drug convictions, and Talley did not object to the admission of these convictions at his trial. Because Talley didn't challenge the admissibility of this evidence, or the applicability of section 841(b)(1)(A), the district court did not err in sentencing Talley to a mandatory minimum life sentence based on his two prior felony drug convictions.

*Sentencing guideline errors*

Talley finally contends that the district court erred in calculating his advisory sentencing guideline range by enhancing his sentence under guideline section 2D1.1(b)(1) because he possessed a firearm during the offense and under section 4B1.1(a) and (b)(1) because he was a career offender. But because Talley was sentenced to mandatory life under section 841(b)(1)(A), "any error in the guidelines calculations [was] harmless." United States v. Chirino-Alvarez, 615 F.3d 1344, 1346 (11th Cir. 2010) (determining that despite the defendant's challenge to a three-level sentencing enhancement, any error was harmless because he was subject to a mandatory minimum above the guideline range). Even if the district court erred in calculating the advisory guidelines range for Talley's sentence, the error would not have affected his sentence because the district court was required to impose the mandatory minimum life sentence under section 841(b)(1)(A). Thus, we do not need to determine whether the district court erred in applying these enhancements because

19

any change in Talley's guidelines range would not have changed the mandatory minimum sentence.

## CONCLUSION

For these reasons, we affirm Talley's convictions and sentences.

**AFFIRMED**.