# United States Court of Appeals
## For the First Circuit

No. 05-1181

BENSON EZIAMAKA ONWUAMAEGBU,

Petitioner,

v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF THE

BOARD OF IMMIGRATION APPEALS

Before

Lipez, Circuit Judge,

Cyr and Stahl, Senior Circuit Judges.

Joseph L. Grimaldi and Law Offices of Joseph L. Grimaldi, P.C., on brief for petitioner.
Peter D. Keisler, Assistant Attorney General, Stephen J. Flynn, Senior Litigation Counsel, and Anh-Thu P. Mai, Attorney, on brief for respondent.

December 6, 2006

**CYR, Senior Circuit Judge.**  Benson Eziamaka Onwuamaegbu appeals from the Board of Immigration Appeals' (BIA) denial of his motion to reconsider its summary affirmance of an immigration judge's decision, which refused to waive inadmissibility pursuant either to § 212(h) or (i) of the Immigration and Nationality Act (INA).  See INA § 212(h), (i), 8 U.S.C. § 1182(h), (i).  We vacate the denial, and remand to the BIA for written clarification of its grounds for summary affirmance.

**I**

**BACKGROUND**

Onwuamaegbu, a native and citizen of Nigeria, came to the United States in the early 1980s on a temporary student visa. During 1986, he (i) married a lawful permanent resident (LPR); (ii) was convicted of larceny by check in Massachusetts and received a suspended six-month sentence; and (iii) applied for adjustment to LPR status based on his recent marriage to an LPR.  In his application, however, Onwuamaegbu falsely responded "no" to the question: "Have you ever, in or outside the United States, been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations?"  In 1988, Onwuamaegbu was convicted on two occasions for forgery in New Hampshire, and again received suspended sentences. Nevertheless, Onwuamaegbu was granted unconditional LPR status in 1989.

At some point prior to March 14, 2000, Onwuamaegbu took a trip of unknown duration to Nigeria. Upon returning to the United States, he was charged with inadmissibility by the Immigration and Naturalization Service (INS), based on his three prior convictions for crimes of moral turpitude (viz., larceny by check and forgery), INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), and for his willful misrepresentation regarding his Massachusetts conviction in his 1986 application for adjustment of status, INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i). Onwuamaegbu conceded removability, but contended that his deportation would result in "extreme hardship" to his family, and requested waivers of inadmissibility pursuant to INA § 212(h) and (i).

Following a hearing, the immigration judge (IJ) found Onwuamaegbu removable under INA § 212(a)(2)(A)(i)(I) or § 212(a)(6)(C)(i). Although the IJ determined that Onwuamaegbu's family would suffer extreme hardship if he were to be deported, she denied his request for a § 212(h) and (i) waiver due to the fact that he had previously been admitted as an LPR, but had not accrued the requisite seven years of continuous lawful residence in the United States. Onwuamaegbu appealed the IJ's decision to the BIA, contending that the IJ had erred in denying him a § 212(h) or (i) waiver, given that: (i) Onwuamaegbu had achieved LPR status in 1989; (ii) the fact that he achieved that status by fraudulent

-3-

means was not relevant to his entitlement to a § 212(h) waiver; (iii) he therefore had lived lawfully and continuously in the United States from 1989 to 2000 (viz., more than the requisite seven years); and (iv) his brief trip to Nigeria could not – as a matter of law – have retolled the seven-year continuous residence requirement. In September 2004, the BIA summarily affirmed the IJ's decision. Onwuamaegbu did not petition for review of that denial, electing instead to file a timely motion to reconsider the BIA's denial of his appeal. The BIA denied the motion for reconsideration, and Onwuamaegbu filed a timely petition for review.

## II

### DISCUSSION

### A. Standard of Review

As Onwuamaegbu filed no petition for review from the BIA's September 2004 denial of his appeal from the IJ's decision, and that denial became final after 30 days,[1] we lack jurisdiction to review it. See 8 U.S.C. § 1252(b)(1); Zhang v. INS, 348 F.3d 289, 292 (1st Cir. 2003) (noting that "[the] need to timely appeal is a strict jurisdictional requirement"). Rather, Onwuamaegbu submitted a timely petition for review from only the BIA's January

---

[1]The filing of the motion to reconsider did not toll the 30-day period within which Onwuamaegbu was permitted to seek review of the BIA's denial of his appeal. See Ven v. Ashcroft, 386 F.3d 357, 359-60 (1st Cir. 2004) (citing Stone v. INS, 514 U.S. 386, 405-06 (1995)).

-4-

2005 denial of his motion for reconsideration of the September 2004 BIA decision. See 8 C.F.R. § 1003.2(b). Although we have jurisdiction to review this BIA decision, see Nascimento v. INS, 274 F.3d 26, 28 (1st Cir. 2001), our standard of review is more circumscribed than it otherwise would have been had Onwuamaegbu petitioned for review from the BIA's denial of his appeal. We review the denial of a motion to reconsider only for abuse of discretion. See Zhang, 348 F.3d at 293; see also Esenwah v. Ashcroft, 378 F.3d 763, 765 (8th Cir. 2004) (noting that abuse-of-discretion review of the BIA's denial of a motion for reconsideration is "considerably more deferential than the ordinary administrative-law standard that governs our review of agency decisions"), cert. denied, 544 U.S. 962 (2005). In order to surmount this higher standard of review, Onwuamaegbu must demonstrate that the BIA's denial was "made without a 'rational explanation, inexplicably departed from established policies, or rested on an impermissible basis' (such as race)." Zhang, 348 F.3d at 293 (citation omitted).

Although we normally review BIA decisions, and not IJ decisions, we directly review the IJ's decision in this case because the BIA summarily affirmed it. See Stroni v. Gonzales, 454 F.3d 82, 86-87 (1st Cir. 2006).

## B.  Removability Pursuant to INA § 212(a)(2)(A)(i)(I) & 212(a)(6)(C)(i)

First, Onwuamaegbu asserts that the IJ erred in ruling

that he was removable due to his previous conviction for a crime of moral turpitude (viz., the May 1986 Massachusetts conviction for larceny by check), INA § 212(a)(2)(A)(i)(I),[2] and that he had conceded that he was removable for failing to disclose that conviction in his September 1986 application for lawful permanent resident status, see INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).[3] Onwuamaegbu points out that, at the time of that conviction, the INA excepted convictions for a "petty offense," see INA § 212(a)(9), 8 U.S.C. § 1182(a)(9) (repealed), and argues that his state conviction meets this criterion given that larceny by check is classified and/or punishable as a "misdemeanor" under Massachusetts law, see Mass. Gen. Laws Ann. ch. 274, § 1. He further contends that his failure to disclose this "misdemeanor" conviction on his 1986 LPR application was therefore, by definition, not "material," hence not an additional ground for

---

[2]Subsection 212(a)(2)(A)(i)(I) provides: "[A]ny alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of – a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime . . . is inadmissible." INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). Larceny is generally considered a crime of moral turpitude. See, e.g., Lawrence v. Gonzales, 446 F.3d 221, 226-67 (1st Cir. 2006).

[3]Subsection 212(a)(6)(C)(i)provides: "Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible." INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i).

removability under § 212(a)(6)(C)(i).

We need not address these questions, however, as Onwuamaegbu failed to raise them before the BIA, either by appeal from the IJ's decision, or in his motion for reconsideration. Instead, he simply challenged the IJ's decision to deny him a waiver of inadmissibility under INA § 212(h) and (i), see infra. Arguments not raised on appeal to the BIA are deemed waived, for failure to exhaust administrative remedies. See Susanto v. Gonzales, 439 F.3d 57, 61 (1st Cir. 2006).

## C.    The Section 212(h) Waiver of Inadmissibility

Next, Onwuamaegbu challenges the IJ's determination that he was ineligible for a discretionary waiver of inadmissibility under INA § 212(h), which provides in pertinent part:

> The Attorney General may, in his discretion, waive [inadmissibility] . . .
>
> [1](B) in the case of an immigrant who is the spouse, parent, son, or daughter of a citizen of the United States or an alien lawfully admitted for permanent residence if it is established to the satisfaction of the Attorney General that the alien's denial of admission would result in extreme hardship to the United States citizen or lawfully resident spouse, parent, son, or daughter of such alien . . . .
>
> [2] No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of

-7-

proceedings to remove the alien from the United States.

INA § 212(h)(1)(B), 8 U.S.C. § 1182(h)(1)(B) (emphasis added). Hence, subsection 1 invests the Attorney General with the discretion to grant a waiver to an immigrant who demonstrates that his deportation will result in familial hardship, whereas subsection 2 defines several subcategories of immigrants who are per se ineligible for this waiver even if they can establish "extreme hardship".

The IJ found that Onwuamaegbu satisfied the "extreme hardship" criterion of § 212(h)(1)(B), but went on to deny the waiver because Onwuamaegbu (i) was an immigrant "previously . . . admitted" for lawful permanent residence, and (ii) had "not lawfully resided continuously in the United States for a period of not less than seven years." The IJ noted that the BIA had interpreted the unambiguous phrase "previously . . . admitted" to refer to any immigrant who had in fact obtained LPR status, regardless of whether he had done so by lawful or unlawful means. See In re Ayala, 22 I. & N. Dec. 398, 401 (BIA 1998). Thus, the IJ noted that Onwuamaegbu's admission as an LPR in 1987, even if he obtained that status by making a material misrepresentation in his application, satisfied the "previously . . . admitted" criterion of § 212(h), and Onwuamaegbu was therefore "bound" by the requirement that he must have lawfully resided continuously in the United States for at least seven years. The IJ noted that Onwuamaegbu was

-8-

a "returning alien" in March 2000, and therefore did not satisfy the seven-year requirement.

In the petition for review, Onwuamaegbu maintains that the IJ's decision is erroneous, as a matter of law, in that it used March 2000 as the measuring point for the "seven year" period, whereas the IJ should have inquired whether Onwuamaegbu had continuously resided in the United States from March 1993 to March 2000. The answer, Onwuamaegbu suggests, is plainly "yes." He contends that the BIA abused its discretion in denying his reconsideration motion because Ayala, the sole basis for the IJ's decision, does not provide a definition of the critical phrase "lawfully resided continuously". Furthermore, Onwuamaegbu posits that the IJ could not have determined that his trip abroad had tolled his period of continuous United States residence without first determining the circumstances and duration of the trip, which she unquestionably did not do.

## 1.    **Ayala and the "Previously Admitted" Factor**

Section 212(h) embodies two distinct concepts:  (i) previous admission "as an alien lawfully admitted for permanent residence," and (ii) continuous lawful residence. (Emphasis added.)  The Ayala case notes that the former concept is a threshold criterion, in that it defines the class of aliens who are required to satisfy the latter "lawful residence" criterion, which is contained in a pendant "if" clause. See Ayala, 22 I. & N. Dec.

-9-

at 401. Once an immigrant has been admitted as an LPR, he may obtain a waiver only if he meets the seven-year rule. If an immigrant has never before been admitted as an LPR (viz., if he is an illegal alien), he is not disqualified from obtaining a § 212(h) waiver, whether or not he has lawfully resided continuously in the United States for seven years.

Although it may seem incongruous that Congress accorded such preferential treatment to a non-LPR immigrant over one who has already achieved LPR status, the courts uniformly have upheld this statutory distinction against equal protection challenges. See, e.g., De Leon-Reynoso v. Ashcroft, 293 F.3d 633, 640 (3d Cir. 2002); Lukowski v. INS, 279 F.3d 644, 647-48 (8th Cir. 2002); Lara-Ruiz v. INS, 241 F.3d 934, 947 (7th Cir. 2001). The purported "rational basis" for the distinction made by Congress is that LPR immigrants have enjoyed the benefits and advantages that attend their "lawful" status, and should they engage in unlawful acts while remaining LPRs, they should be subject to harsher consequences than a non-LPR immigrant. See De Leon-Reynoso, 293 F.3d at 639-40. That is precisely the import of Ayala: even an immigrant who has obtained LPR status by unlawful means goes on to enjoy the same special benefits of LPR status as one who obtained it by lawful means. By using the term "previously admitted," rather than (for example) "previously and lawfully admitted," Congress demonstrated that it specifically intended to penalize

those immigrants who sought and gained LPR status only to abuse its benefits.

Thus, based on the extant BIA precedent, the IJ rationally concluded, as a threshold matter, that Onwuamaegbu was an immigrant "previously . . . admitted . . . as an alien lawfully admitted for permanent residence," even though he had fraudulently misrepresented a material fact in his 1986 LPR application, and the IJ determined that Onwuamaegbu therefore was "bound," by subsection 212(h), to satisfy the seven-year rule. See Ayala, 22 I. & N. Dec. at 401 ("We are not persuaded by the respondent's argument that we should read his proposed distinction into the law by focusing on the term 'lawfully admitted' and disregarding the entire phrase that provides the context for that term, namely 'previously been admitted' to the United States as an alien lawfully admitted for permanent residence."); cf. In re Koloamatangi, 23 I. & N. Dec. 548, 551 (BIA 2003) (defining, for purposes of cancellation of removal under INA § 240A(a), the phrase "lawfully admitted for permanent residence" to exclude admissions acquired by fraudulent means, but expressly distinguishing Ayala because of § 212(h)'s differing choice of language); cf. also Savoury v. U.S. Attorney Gen., 449 F.3d 1307, 1315 (11th Cir. 2006) (observing same distinction between Ayala and Koloamatangi); Obioha v. Gonzales, 431 F.3d 400, 409 n.10 (4th Cir. 2005) (same). In a word, then, like Ayala, Onwuamaegbu was not a non-LPR, viz., an illegal alien

-11-

entitled to escape the strictures of the seven-year test.

### 2.   <u>**The Lawful Continuous Residence Factor**</u>

After resolving this threshold eligibility question under <u>Ayala</u>, however, the IJ still was required to determine whether Onwuamaegbu had "lawfully resided continuously in the United States for a period of not less than seven years immediately preceding the date of initiation of proceedings to remove the alien from the United States." (Emphasis added.)  <u>Ayala</u>, which dealt exclusively with the threshold term "'previously been admitted' to the United States as an alien lawfully admitted for permanent residence," did not reach the issue of the seven-year test's distinct concept of lawful and continuous <u>residence</u>.

With respect to the latter requirement, the IJ set forth a very terse holding, which provides <u>in</u> <u>toto</u>:

> Because the respondent was admitted to the United States on March 14, 2000 as a returning LPR, he has not lawfully resided continuously in the United States for seven years, rendering him ineligible for a waiver under § 212(h) of the Act.  As such, he remains removable under § 212(a)(2)(A)(i)(I) of the Act.

Respondent argues that we should assume from this statement that the IJ denied the § 212(h) waiver because she determined that Onwuamaegbu had obtained his LPR status in 1989 by fraudulent means, and therefore his requisite period of seven-years "lawful" residence under § 212(h) never commenced in 1989.

-12-

The problem with the IJ's concise holding, however, is that it fails to pinpoint with sufficient clarity the IJ's precise rationale, and because the BIA summarily affirmed the IJ's decision, leaves us without an adequate basis for deciding whether the BIA abused its discretion in denying Onwuamaegbu's reconsideration. See 8 C.F.R. § 1003.1(e)(4) (noting that the BIA's summary affirmance connotes only the BIA's agreement with the result reached by the IJ, rather than the IJ's specific rationale). We explain.

The IJ's bare reference to the term "returning alien" seems to direct us implicitly to INA § 1101(a)(13), which governs the status of LPRs returning to the United States from a trip abroad. As a returning LPR, Onwuamaegbu presumptively would not have been regarded as an applicant for admission (viz., would not have been placed in deportation proceedings), unless he fell under one of six exceptions:

> (i) has abandoned or relinquished that status,
>
> (ii) has been absent from the United States for a continuous period in excess of 180 days,
>
> (iii) has engaged in illegal activity after having departed the United States,
>
> (iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this chapter and extradition proceedings,
>
> (v) has committed an offense identified in section 1182(a)(2) of this title, unless since

-13-

such offense the alien has been granted relief under section 1182(h) or 1229b(a) of this title, or

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C). The IJ did not specify which exception she relied on in determining Onwuamaegbu inadmissible. Because Onwuamaegbu left the United States in 2000 to travel to Nigeria, he was a "returning alien" presumptively entitled to readmission, but his circumstances – viz., his trip abroad and his prior conviction for crimes of moral turpitude – potentially barred his readmission as an LPR under exceptions (i), (ii), and/or (v) to subsection 101(a)(13).

As we have noted, however, see supra Section II.C.1, Ayala was the only case discussed at length by the IJ. Although the IJ correctly determined that Onwuamaegbu was required to establish seven-years' residence under § 212(h) to obtain a waiver, Ayala did not reach the issue of the lawful-and-continuous-residence requirement, and does not constitute a valid ground for denying Onwuamaegbu a § 212(h) waiver.[4] At the present juncture, we cannot determine whether or not the IJ rested the § 212(h) denial entirely on Ayala, and by extension, whether or not the BIA

_____

[4]In fact, on appeal before the BIA, the respondent argued that the IJ had incorrectly relied on Ayala as a basis for measuring the seven-year residency requirement.

-14-

accordingly interpreted the IJ's holding, thereby abusing its discretion.

Moreover, Onwuamaegbu plausibly contends that it is impossible for us to determine with sufficient certainty the rationale underlying the IJ's laconic holding as to the § 212(h) "lawful" and "continuous" residency requirement, and that for all we know she may have rested her decision – for example – solely on the interruption in Onwuamaegbu's "continuous" United States residency occasioned by his Nigerian trip in 2000. The IJ simply noted that Onwuamaegbu "has not lawfully resided continuously in the United States for seven years," without specifying whether the fatal defect consisted of a lack of lawfulness, continuity, or both. Moreover, by adverting to the date March 14, 2000, the IJ invited an inference that Onwuamaegbu's Nigerian trip somehow may have <u>retolled</u> his seven-year residency period, setting the clock back to zero. If the IJ did rely on the Nigerian trip's interruption of Onwuamaegbu's seven-year residency period (from March 1993 to March 2000), such a finding is not supported by "substantial evidence" in the record, since no evidence was adduced at the hearing concerning the duration of Onwuamaegbu's trip to Nigeria, let alone any evidence that his trip had lasted more than the 180 days prescribed by § 1101(a)(13)(ii). Once again, it would have been an abuse of discretion had the BIA so interpreted the IJ's holding, and affirmed on that ground.

Given these alternative interpretations of the IJ's _ratio decidendi_, the efficacy of the respondent's contention that the IJ must have denied the § 212(h) waiver pursuant to exception (v) of INA § 101(a)(13)(C) because the IJ determined that Onwuamaegbu had obtained his LPR status in 1989 by fraudulent means and that his "residence" for purposes of § 212(h) was "unlawful" _ab initio_, can hardly be deemed incontestable. Were that the intended rationale, one reasonably could expect some mention of the date of the inception of Onwuamaegbu's unconditional LPR status in 1989, and not March 14, 2000, as the date of primary significance. Although the hearing transcript reveals that the IJ explored the "_ab initio_" theory with the parties, there is no such definitive _ore tenus_ holding. Had the IJ ultimately decided to rely on the _ab initio_ theory, moreover, one reasonably would expect some statement in her written opinion that this was the conceptual basis for denying the § 212(h) waiver. Once again we are left with a double-layered ambiguity: what was the basis for the IJ's decision, and what inferences did the BIA draw regarding the basis for the IJ's decision?

Moreover, it is not at all obvious that the IJ would have relied on the "_ab initio_" principle as constituting settled and clear-cut law. In support of that principle, respondent cites cases which distantly predate the 1996 enactment of § 212(h), and which plainly turn upon the appropriate interpretation of the

-16-

distinct term "lawful <u>admission</u>," rather than "lawful <u>residence</u>." <u>See</u>, <u>e.g.</u>, <u>Matter of Longstaff</u>, 716 F.2d 1439, 1441 (5th Cir. 1983); <u>cf.</u> <u>In re Koloamatangi</u>, 23 I. & N. Dec. at 550-51 (defining, for purposes of cancellation of removal under INA § 240A(a), the phrase "lawfully admitted for permanent residence" to exclude admissions acquired by fraudulent means). The terms "admission" and "residence" plainly are not incontestably coterminous. No extant court or BIA decision has interpreted the term "lawfully" in § 212(h), and the statute itself affords no definition. <u>See</u> <u>Yepez-Razo</u> v. <u>Gonzales</u>, 445 F.3d 1216, 1219 n.6 (9th Cir. 2006).[5] Onwuamaegbu was "lawfully" <u>admitted</u>, per <u>Ayala</u>, and it is at least arguable that, as a "<u>lawful</u> permanent <u>resident</u>," he "resided" lawfully in the United States for the requisite seven years.

In any event, since the BIA summarily affirmed the IJ, it never set forth its own rationale for affirming the IJ's denial of the § 212(h) waiver. <u>See</u> <u>Zhang</u>, 348 F.3d at 293 (noting that the

_____

[5]As the agency administering the INA, respondent (acting through the BIA) would be first in line to interpret this undefined statutory term, at which point the courts would accord <u>Chevron</u> deference to the BIA's interpretation, provided it were a permissible one. <u>See</u> <u>Yepez-Razo</u>, 445 F.3d at 1219 n.6 (noting that the court would need to defer to BIA's interpretation of undefined phrase "lawfully resided continuously" in § 212(h)). Normally, <u>Chevron</u> deference is to be accorded only to statutory interpretations by the <u>BIA</u>, however, not to IJ interpretations. <u>See</u>, <u>e.g.</u>, <u>Lin</u> v. <u>United States Dep't of Justice</u>, 416 F.3d 184, 189-191 (2d Cir. 2005). The BIA summarily affirmed, which simply connotes the BIA's agreement with the result reached by the IJ, rather than its specific rationale. <u>See</u> <u>id.</u> at 190 (citing 8 C.F.R. § 1003.1(e)(4)).

BIA abuses its discretion if its denial is "made without a 'rational explanation'") (citation omitted). The BIA's "[f]ailure to explain a decision adequately provides a ground for reversal. . . . [since] cursory, summary or conclusory statements from the Board leave us to presume nothing other than an abuse of discretion." Zhao v. United States Dep't of Justice, 265 F.3d 83, 97 (2d Cir. 2001) (citation omitted). Moreover, the BIA may have affirmed on some other ground not apparent to us. Yet, it is extremely problematic for appeals courts to assess an exercise of the BIA's discretion absent a reasonably clear signal as to the precise rationale for its exercise of discretion.

Finally, the equities in the present case are especially troublesome, and the personal stakes for Onwuamaegbu ought not be determined on the basis of mere supposition. Onwuamaegbu admittedly passed bad checks, then concealed his criminal convictions at the time he obtained an "adjustment of status" in 1989. On the other hand, he has since resided in the United States for nearly twenty years without further criminal behavior, and has a spouse and children. Moreover, the IJ found that his deportation would result in extreme hardship to Onwuamaegbu's family. In these extraordinary circumstances, it is essential that the case be remanded to the BIA, with instructions to issue a written clarification of the grounds for its affirmance of the IJ's denial

of a § 212(h) waiver.[6]

## III

## CONCLUSION

Onwuamaegbu has waived any challenge to the IJ's determination that he was in fact subject to removal under § 212(a)(6)(C)(i). See supra Section II.B. As we cannot determine with sufficient certainty the basis for the BIA's denial of Onwuamaegbu's motion for reconsideration, however, we vacate the denial and remand the case to the BIA for its issuance, in due course, of a written clarification of its rationale for accepting the IJ's denial of the § 212(h) waiver application.

**We hereby grant the petition for review of the BIA's denial of the motion for reconsideration, and remand the case to the BIA for an order of clarification consistent with the opinion herein. SO ORDERED.**

---

[6]At this juncture, we need not address Onwuamaegbu's argument that he was entitled to a § 212(i) waiver as well, which prescribes relief for some aliens who are excludable for willful misrepresentation of a material fact, and who establish extreme hardship. INA § 212(i), 8 U.S.C. § 1182(i). Even if he were to qualify for a § 212(i) waiver, Onwuamaegbu is independently removable under § 212(a)(2)(A)(i)(I) due to his conviction of a crime of moral turpitude. The latter ground for removability cannot be waived under § 212(i).