# United States Court of Appeals
## For the First Circuit

No. 14-1193

SONIA PETERS TILLERY,

Petitioner,

v.

LORETTA E. LYNCH,
UNITED STATES ATTORNEY GENERAL,*

Respondent.

FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Selya and Lipez, Circuit Judges.

Thomas Stylianos, Jr. on brief for petitioner.
Stuart F. Delery, Assistant Attorney General, Jennifer P. Levings, Senior Litigation Counsel and Tim Ramnitz, Attorney, Office of Immigration Litigation, Civil Division, on brief for respondent.

May 11, 2016

---

* Pursuant to Fed.R.App.P. 43(c)(2), Attorney general Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr. as the respondent.

**HOWARD, Chief Judge**.  Petitioner Sonia Peters Tillery overstayed her visa and was later subjected to removal proceedings.  In response Tillery applied, unsuccessfully, for special rule cancellation of removal for battered spouses, a relief provision enacted pursuant to the Violence Against Women Act of 1994 ("VAWA").  See 8 U.S.C. § 1229b(b)(2)(A).  In her petition, she challenges the BIA's determination that she needed to demonstrate a good faith marriage to be eligible for VAWA relief.  We are unable meaningfully to review the BIA's ruling in this case, and so we vacate the BIA's decision and remand for proceedings consistent with this opinion.

## I.

Tillery, a native of St. Vincent and the Grenadines, entered the United States in February 2004 (then, as Sonia Peters).  She was allowed to stay until May 13, 2004, as a non-immigrant B-1 temporary visitor for business. 8 U.S.C. §§ 1101(a)(15), 1201(a).  Tillery remained in this country beyond the appointed time and eventually met and married Keial Tillery, a United States citizen.

Shortly after their May 2008 wedding, Tillery's husband was incarcerated and remained imprisoned for approximately a year.  He was released in June 2009, and, according to Tillery, the couple resumed living together along with a third person, Annis Toney.  Tillery says that her husband soon began verbally and physically abusing her, including forcing her to engage in sexual

-2-

conduct against her will.  At the same time, he pursued an I-130 spousal visa petition on her behalf, which the government denied after he failed to appear at the scheduled interview in August 2009.  According to Tillery, her husband disappeared the day before the interview, and she has not heard from him since.

The Department of Homeland Security initiated removal proceedings against Tillery for overstaying her original temporary visa.  Conceding removability, Tillery indicated her intent to apply for VAWA special rule cancellation of removal.  See 8 U.S.C. § 1229b(b)(2).  To qualify for this discretionary relief, an applicant is required to demonstrate:  (i) battery or extreme cruelty by a spouse who is a United States citizen; (ii) a continuous period of physical presence; (iii) good moral character; (iv) not having an aggravated felony conviction and not being inadmissible or deportable for certain specified reasons prescribed by statute (though, an agency waiver may apply); and (v) extreme hardship following removal.  Id. § 1229b(b)(2)(A).

In 2010, Tillery filed her VAWA application (through a Form EOIR-42B), and the Immigration Judge ("IJ") held a merits hearing in February 2012, during which Tillery and the housemate, Toney, testified to the alleged abuse.  Their collective description, however, gives very little substantive detail.  Indeed, Tillery's entire direct testimony spans a total of six transcript pages, with a mere eight questions and answers (about one and one-half

-3-

transcript pages) devoted to the incidents of domestic abuse. Toney's account adds little more than a brief description amounting to about a half-page of transcript.

During the hearing, the IJ focused on discrepancies between the two witnesses' accounts of the married couple's living arrangement during the time frame when the alleged abuse occurred. For example, while Tillery claimed that they lived at the apartment together after her husband was released from prison, Toney testified that Tillery's husband Keial only "visited" and "slept over once in a while." Toney also explained that Keial Tillery "never really lived there," and that when Keial was released from prison, Sonia Tillery "wouldn't allow him in [her] apartment because he was getting more violent and swearing."

To investigate his concerns about the inconsistencies, the IJ recalled the petitioner to the witness stand. Her subsequent testimony left the IJ troubled about the sincerity of the marriage itself. Counsel for Tillery and for the government disagreed over whether Tillery was required to prove that hers was a good faith marriage in order to be eligible for VAWA relief. Neither side, however, provided the IJ with legal authority on that point.

In a written decision denying the application, the IJ expressed doubts about whether "the marriage was a sincere marriage" and further remarked that Tillery's behavior "subsequent to her marriage and the fact that she has testified non-credibly

with respect to the living arrangements raises the inference that the marriage was not for purposes other than obtaining immigration benefits."  The judge stopped short, however, of finding that the marriage was not "bona fide[ ]."  The IJ ultimately denied Tillery's VAWA application on the ground that her "testimony [was] unreliable and non-credible with respect to her abuse," finding that her "application [was] unworthy."

The BIA affirmed.  In so doing, the Board declined to "address the issue of whether [Tillery] presented credible evidence that she was battered or subjected to extreme cruelty by [her husband]."  Instead, it read the IJ's decision as also finding that Tillery had failed to present "sufficient evidence to demonstrate that she and [her husband] did not enter their marriage 'for the primary purpose of circumventing the immigration laws,'" and affirmed on that basis.

## II.

In her petition for review, Tillery argues that the BIA erred in holding that a good faith marriage must be shown before an applicant may be eligible for VAWA special rule cancellation of removal.  See 8 U.S.C. § 1229b(b)(2)(A)(i)-(v). The government says in response that the existence of the requirement is supported by both the plain meaning of the statute and by its legislative history.  Our consideration of the issue, however, has been hindered by the BIA's failure to articulate a sufficient

explanation of its interpretation of the VAWA relief provision that Tillery invoked. The government's rationale before us cannot serve to fill the void that was left by the agency in this case. See Harrington v. Chao, 280 F.3d 50, 60 n.12 (1st Cir. 2002) (It is not enough for the agency's lawyers to "talk a good line" on appellate review; rather, it is necessary that the agency itself describe "in its own decision what it is doing and why, in a way that will be clear to the judicial reviewers."); see also Gallimore v. Attorney Gen., 619 F.3d 216, 226 (3d Cir. 2010) ("[W]e are not entitled to sustain [the BIA's] decision on grounds that the Attorney General articulates ex post."). We explain.

Typically, where the BIA adopts an IJ's ruling and reasoning, as it purported to have done here, we review both opinions to evaluate the merits of a petition presented to us. See Costa v. Holder, 733 F.3d 13, 16 (1st Cir. 2013). But, as we view it, the BIA misread the basis for the IJ's denial as resting on a putative good faith marriage eligibility requirement rather than on the lack of credible evidence supporting the allegations of abuse. We are thus unable to consider what the IJ saw as the crux of the matter and treat this case as one in which the BIA rested its decision on an alternative basis. See Reynoso v. Holder, 711 F.3d 199, 205 (1st Cir. 2013); Halo v. Gonzales, 419 F.3d 15, 19 (1st Cir. 2005). Accordingly, it is the BIA's opinion that serves as

the final agency decision under review before us.  See Vasquez v. Holder, 635 F.3d 563, 565 (1st Cir. 2011).

Although it enjoys broad authority to exercise independent judgment and to rest on an alternative basis when denying a petition, the BIA must clearly exposit its chosen path. See 8 C.F.R. § 1003.1(d)(1); Halo, 419 F.3d at 18-19; Gailius v. INS, 147 F.3d 34, 44 (1st Cir. 1998); Chen v. INS, 87 F.3d 5, 7 (1st Cir. 1996).  This agency responsibility ensures, among other things, that a reviewing court is able to provide intelligent review on issues over which it has appellate jurisdiction.  See 8 C.F.R. § 1003.1(d)(1); Dia v. Ashcroft, 353 F.3d 228, 268 (3d Cir. 2003); Albathani v. INS, 318 F.3d 365, 377-78 (1st Cir. 2003); see also SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) ("'We must know what [an agency] decision means before the duty becomes ours to say whether it is right or wrong.'"); Harrington, 280 F.3d at 61 (vacating and remanding "is a proper remedy when an agency fails to explain its reasoning adequately.").

Here, the BIA's written decision does not adequately explain its conclusion that the operative statute requires an alien to prove a good faith marriage as an eligibility requirement for VAWA special rule cancellation of removal.  In providing the legal framework, the BIA first identified the basic statutory requirements for VAWA relief under 8 U.S.C. § 1229b(b)(2).  Then, in addition to these statutory prerequisites, the BIA stated

cursorily that "the alien must also show that he or she did not enter the marriage 'for the primary purpose of circumventing the immigration laws.'" It did not purport to rely on § 1229b(b)(2) for this ruling, nor did it provide any explanation or legal reasoning for apparently construing the statute in that manner. Instead, the BIA cited to a regulation, see 8 C.F.R. § 204.2(c)(1)(ix), and a BIA decision, see Matter of A-M-, 25 I&N. Dec. 66 (BIA 2009). While citation alone may be sufficient in certain instances to shed light on the agency's reasoning, neither cited authority does so here.

The cited regulation, for example, specifically relates to petitions for adjustment of status, 8 U.S.C. § 1154, including VAWA self-petitions under § 1154(a)(1)(A)(iii)(I). See generally Bolieiro v. Holder, 731 F.3d 32, 40 (1st Cir. 2013) (noting distinct procedural paths of VAWA self-petitions under § 1154(a)(1)(A) and VAWA special rule cancellation under § 1229b(b)(2)). Admittedly, an alien seeking adjustment of status as a VAWA self-petitioner must prove that she entered into the marriage in good faith. See 8 U.S.C. § 1154(a)(1)(A)(iii)(I). But the BIA's rationale for equating the two VAWA avenues for relief, without even referencing a provision under § 1229b(b)(2), is left unexplained. Our task is to review the agency's legal interpretation, not perform it in the first instance. See Negusie

-8-

v. <u>Holder</u>, 555 U.S. 511, 516-17, 523 (2009); <u>Chenery</u>, 318 U.S. at 88; <u>Ucelo-Gomez</u> v. <u>Gonzales</u>, 464 F.3d 163, 169-70 (2d Cir. 2006).

In addition, the single agency decision, cited by the Board in a footnote, actually makes the agency's reasoning more obscure. That decision, <u>Matter of A-M-</u>, does provide important background on the enactment and overall meaning of the VAWA special cancellation provision, but it does not hold that proof of a good faith marriage is a required eligibility component. It does not even address sham marriages at all. Rather, the passage cited by the BIA relates to the agency's discretionary decision to deny relief for VAWA special rule cancellation of removal where the past abusive relationship had already ended and the former spouse no longer posed a threat to the alien. See <u>Matter of A-M-</u>, 25 I & N. Dec. at 78. As far as we can tell, this was not the purported basis for the BIA's decision here.

The underlying administrative record does not illuminate the BIA's rationale, either. The record shows only that, while urging the IJ to adopt such a prerequisite for Tillery's VAWA application, the government also candidly acknowledged that it had no legal authority to offer the agency for that proposition. Nor did the parties present the BIA with meaningful legal advocacy that would allow us to glean the agency's reasoning for its ruling.

We acknowledge, of course, that nothing in § 1229b(b)(2)(A) suggests turning a blind eye to the legitimacy of an alien's

marital status.  Indeed, the fourth eligibility component, which looks to the alien's potential "inadmissible" or "deportable" status, cross-references the marriage fraud provision that is codified at 8 U.S.C. § 1227(a)(1)(G).  See 8 U.S.C. § 1229b(b)(2)(A)(iv).[1]  Yet, the BIA's written decision gives no indication that it relied on that or any other provision under § 1229b(b)(2) when requiring that the alien provide affirmative proof of a good faith marriage when resisting removal.  Speculating about the reason that the BIA did not discuss the provision relating to "marriage fraud" is not our role.  It is within the agency's realm to elucidate its rationale, and the BIA's failure to do so hinders meaningful judicial review in this case.[2]

---

[1] The fourth eligibility component for VAWA relief under § 1229b(b)(2)(A) lists various statutory disqualifiers, some of which may be waived by the agency, see 8 U.S.C. § 1229b(b)(2)(A)(iv), and specifically may be waived as to VAWA self-petitioners, see generally 8 U.S.C. § 1227(a)(1)(H).

[2] Under the marriage fraud provision, an alien shall be considered deportable when, among other things, "it appears to the satisfaction of the Attorney General that the alien has failed or refused to fulfill the alien's marital agreement which in the opinion of the Attorney General was made for the purpose of procuring the alien's admission as an immigrant." 8 U.S.C. § 1227(a)(1)(G)(emphasis added).  The relationship between sham marriages and eligibility for relief under the VAWA special rule cancellation of removal does not appear to have been fully explored in the caselaw. See, e.g., Hamilton v. Holder, 680 F.3d 1024, 1026-27 (8th Cir. 2012) (while noting that the BIA required affirmative proof that a "marriage was entered into in good faith" for § 1229b(b)(2) VAWA relief, resolving the case on different grounds).

-10-

We do not mean to suggest that the BIA's legal conclusion is necessarily erroneous or unsupportable in the law. We conclude only that the prudent course at this juncture is to vacate and remand. Further agency exposition will equip us to appropriately evaluate the decisional principles that potentially apply. See Negusie, 555 U.S. at 516-17, 523; Soto-Hernandez v. Holder, 729 F.3d 1, 3 (1st Cir. 2013). Nor do we restrict the scope of the remand. The agency remains free, of course, to decide this case on some other or different ground. Without limiting that generality, it may, for example, elect to address the credibility of Tillery's domestic abuse allegations or other matters pertinent to the VAWA relief that she requests.

Accordingly, we **vacate** the denial of Tillery's application for VAWA special-rule cancellation of removal and **remand** for further proceedings consistent with this opinion.

**So ordered**.