# United States Court of Appeals
## For the First Circuit

No. 24-1296

VENTURA CHANCHAVAC GARCIA; ROSA CLEOTILDE TEMA LOPEZ,

Petitioners,

v.

PAMELA J. BONDI, Attorney General,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Chief Judge,
and Rikelman, Circuit Judge.[**]

Val C. Ribeiro, with whom Lider, Fogarty & Ribeiro, P.C. was on brief, for petitioners.

Michael C. Heyse, Senior Litigation Counsel, Office of Immigration Litigation, Civil Division, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Jonathan A. Robbins, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Pamela J. Bondi is automatically substituted for former Attorney General Merrick B. Garland as Respondent.

[**] Judge Selya heard oral argument in this case and participated in the semble, but he did not participate in the issuance of this opinion. The remaining two panelists issued this opinion pursuant to 28 U.S.C. § 46(d).

April 24, 2025

**RIKELMAN, <u>Circuit Judge</u>**. Ventura Chanchavac Garcia and Rosa Cleotilde Tema Lopez (Petitioners) asked the Board of Immigration Appeals (BIA) to reopen their removal proceedings, arguing that they received ineffective assistance of counsel in earlier stages of their case. The BIA denied the motion to reopen, and Petitioners seek this court's review. They argue that the BIA erred in concluding that they were not prejudiced by the performance of their prior attorney and in holding that they had not demonstrated prima facie entitlement to the relief they sought -- cancellation of removal. Because we conclude that the BIA provided insufficient explanation for its ruling, such that we are unable to review the legal bases for its conclusions, we grant the petition and remand to the BIA for further proceedings.

## I.    BACKGROUND

Petitioners are married citizens of Guatemala who entered the United States without inspection and have resided in Massachusetts for over twenty years. They have four children, ages nine, thirteen, sixteen, and twenty, all of whom are U.S. citizens.

In 2015, the U.S. Department of Homeland Security issued Notices to Appear, charging Petitioners with removability. Petitioners then applied for cancellation of removal under 8 U.S.C. § 1229b. This statute permits the Attorney General to cancel removal of a noncitizen who meets certain requirements. <u>See</u> 8

- 3 -

U.S.C. § 1229b(b)(1). Those requirements include that the individual has been physically present in the United States for ten years, has demonstrated good moral character during that time, and has not been convicted of specified offenses. See id. § 1229b(b)(1)(A)-(C). Most importantly for our purposes, to be eligible for relief under § 1229b, the noncitizen must "establish[] that removal would result in exceptional and extremely unusual hardship to the[ir] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." Id. § 1229b(b)(1)(D). Represented by attorney Lidia Sanchez, Petitioners argued that they met the exceptional and extremely unusual hardship requirement. They submitted evidence that their son, L.C., required medical and educational support and had been diagnosed with oppositional defiant disorder, anxiety, and attention deficit hyperactivity disorder (ADHD).

The Immigration Judge (IJ) denied Petitioners' application for cancellation of removal in an oral decision, concluding that they were not statutorily eligible for such relief. He found that Petitioners had been physically present in the United States for at least ten years, were persons of good moral character, and had not been convicted of any offenses that would bar cancellation of removal. As to exceptional and extremely unusual hardship, however, the IJ held that Petitioners had not

carried their burden. Although he found Petitioners "credible," the IJ explained that he required them to "corroborat[e] their otherwise credible testimony." He observed that "[t]he only factors separating this case from other cases [were] the arguments raised by counsel and the evidence in the record relating to [L.C.]." But he concluded that these arguments could not rescue Petitioners' application because "there [was] fairly limited evidence" about L.C. He singled out Petitioners' failure to submit evidence "as to how [L.C.]'s situation would affect him were he to return to Guatemala with his parents" or evidence "corroborat[ing] [Petitioners'] claims that their children would be unable to attend school in Guatemala."

Petitioners appealed to the BIA, still represented by Sanchez. They argued that the IJ had erred in denying their application, see 8 C.F.R. § 1003.1(d)(1), (3), and they also submitted previously unavailable evidence in support of their claim, including new evidence about another child's learning disabilities. They did not submit any additional corroborating evidence about L.C., however, nor did they submit any additional evidence about education in Guatemala.

The BIA dismissed their appeal in early 2020. It "adopt[ed] and affirm[ed] the decision" of the IJ, noting that exceptional and extremely unusual hardship is a high bar and that Petitioners had not provided "sufficient corroborating

documentation regarding how their removal would adversely affect their children."[1]   The BIA also held that the documentation relating to their other child with learning disabilities "would not likely change the result in this case."

Relying on their same attorney, Petitioners filed a statutory motion to reopen under 8 U.S.C. § 1229a(c)(7) less than three weeks later.  They argued that the COVID-19 pandemic would "significantly affect [their] economic situation" and asked the BIA to "reassess its decision based on the impact of the pandemic on the hardship to be experienced by the [U.S.] Citizen children of [Petitioners]."  Four months later, the BIA denied the motion to reopen, finding that "it is speculative that any of the respondents' children will become seriously ill in Guatemala and that the children will suffer undue consequences due to the virus."

Nearly two years passed before Petitioners filed a second statutory motion to reopen in September 2022, this time represented by new counsel.  Petitioners acknowledged that they would ordinarily be limited to a single statutory motion to reopen that must be filed within ninety days of the BIA's final decision. But they argued that the number and time restrictions should be

---

[1] The BIA's decision stated that "[w]e also agree with the [IJ]'s determination that the respondents did provide sufficient corroborating documentation," but we assume, given the context, that the BIA inadvertently omitted the word "not" from this sentence.

equitably tolled. Petitioners contended that in their initial proceeding before the IJ, their appeal to the BIA, and their first motion to reopen (the "Removal Proceedings"), their prior attorney had rendered ineffective assistance of counsel. Accompanying their motion, Petitioners submitted several sources detailing country conditions in Guatemala. These sources included two U.S. Department of State reports with information about education for people with disabilities in the country and an article explaining that, because special education services are limited, most individuals with disabilities in Guatemala receive no schooling. They also submitted a declaration explaining their allegations of ineffective assistance of counsel against Sanchez, documentation that the State Bar of Rhode Island received their complaint against her, and Sanchez's response to their complaint. In her response, Sanchez explained that she did not submit country conditions evidence to the agency because she "do[es] not find that it [is] necessary in cancellation cases" and "[j]udges are very aware of the country conditions for Guatemala." Finally, Petitioners attached new evidence stating that several of their children had medical problems and that a third child had learning challenges.

The BIA denied Petitioners' second motion to reopen in February 2024. It held that the time and number constraints governing statutory motions to reopen could not be equitably tolled based on Petitioners' alleged ineffective assistance of counsel

claim because Petitioners had not shown that their counsel's assistance "was so deficient that they suffered prejudice." And it explained that "the record does not establish [a] prima facie showing of exceptional and extremely unusual hardship in the aggregate."

Petitioners filed this timely petition for review of the BIA's decision.

## II.   STANDARD OF REVIEW

We review the BIA's denial of a statutory motion to reopen for abuse of discretion. See Aponte v. Holder, 683 F.3d 6, 10 (1st Cir. 2012). Under that umbrella standard, we evaluate the BIA's legal conclusions de novo. See id. Further, "we typically focus on the final decision of the BIA," but "to the extent that the BIA deferred to or adopted the IJ's reasoning, we review those portions of the IJ's decision as well." Ferreira v. Garland, 97 F.4th 36, 45-46 (1st Cir. 2024) (cleaned up). And "[w]hen discussing the BIA and IJ's decisions as a unit, we refer to them jointly as 'the agency.'" Id. at 46.

## III. DISCUSSION

### A.   Equitable Tolling

Ordinarily, a noncitizen may file only one statutory motion to reopen their removal proceedings, and this motion must be filed within ninety days of the date of entry of a final administrative order of removal. 8 U.S.C. § 1229a(c)(7)(A),

(c)(7)(C)(i).  But Petitioners argue that (1) these requirements may be equitably tolled, and (2) ineffective assistance of counsel warrants equitable tolling.

We assume, without deciding, that the time and number constraints on statutory motions to reopen, set forth in 8 U.S.C. § 1229a, may be equitably tolled in certain circumstances.[2]  We proceed on that assumption for two reasons.  First, the BIA issued its ruling based on this same assumption.  Instead of denying the motion to reopen outright as time- and number-barred, the BIA opted to decide the merits of Petitioners' ineffective assistance of counsel claim.  Thus, we take the same approach.  See Gicharu v. Carr, 983 F.3d 13, 17-18 & n.1 (1st Cir. 2020) (adopting the BIA's assumption that filing deadlines for statutory motions to reopen may be equitably tolled).  Second, the government has not argued we should do otherwise.  Instead, the government notes that the time and number "limitations may not apply" if "exceptional circumstances warrant applying equitable tolling of either or both limitations."  Thus, we turn to evaluating the BIA's analysis of the merits of Petitioners' statutory motion to reopen.

---

[2] This is an open question in this court.  See M.S.C. v. Garland, 85 F.4th 582, 592 n.13 (1st Cir. 2023) ("[W]e have previously assumed without deciding that equitable tolling may be applicable," but "we have not so definitively ruled." (cleaned up)).

- 9 -

## B.   Ineffective Assistance of Counsel

Petitioners argue that their previous attorney, Sanchez, provided ineffective assistance of counsel, resulting in the denial of their petition and initial motion to reopen.  They point out that in the Removal Proceedings, the agency found that Petitioners had failed to submit evidence corroborating their assertion that L.C.'s disabilities would prevent him from receiving an education in Guatemala.  They contend that Sanchez's failure to submit this evidence doomed their petition.

The BIA ruled that Petitioners failed to establish ineffective assistance of counsel.  But the BIA's explanation of its ruling is too thin for us to evaluate the reasoning behind its resolution of Petitioners' claims.

The BIA's decision does not make clear whether the BIA concluded that Petitioners' attorney was not deficient or that Petitioners had not suffered prejudice from any deficient performance by their attorney.  To establish ineffective assistance of counsel in the context of a removal proceeding, the individual must demonstrate (1) that their counsel's performance was constitutionally deficient, and (2) that they were prejudiced by that deficient performance.  See Matter of Lozada, 19 I. & N. Dec. 637, 638 (BIA 1988), petition denied, Lozada v. INS, 857 F.2d 10, 13 (1st Cir. 1988).  In denying Petitioners' second motion to reopen, however, the BIA rejected their ineffective assistance of

counsel claim by stating only that Petitioners "ha[d] not shown that counsel's representation was so deficient that they suffered prejudice in this case."  From that statement alone, we cannot discern on which prong of the ineffective assistance of counsel test the BIA rested its ruling.  Because we have no basis for assuming that the BIA did not rely on the prejudice prong, we focus our analysis on prejudice.

Importantly, the BIA did not address the critical question at the heart of Petitioners' ineffective assistance of counsel claim: whether corroborating evidence about L.C.'s learning disability could have changed the agency's decision in the Removal Proceedings.  See, e.g., Matter of Melgar, 28 I. & N. Dec. 169, 171 (BIA 2020) (explaining that, to show ineffective assistance of counsel, a noncitizen must establish a "reasonable probability that, but for his attorney's mistakes," they would have obtained relief).  After explaining that Petitioners met the procedural requirements for an ineffective assistance claim, the BIA stated in full:

> The [Petitioners] have not shown that counsel's representation was so deficient that they suffered prejudice in this case.  The [Petitioners] presented evidence to the [IJ] and the [BIA] which was properly considered. Dissatisfaction with the result of the case or the attorney's strategy does not constitute ineffective assistance of counsel.  To establish a due process rights violation, a noncitizen "must prove that there was a

- 11 -

deficiency or violation and that he was prejudiced by it."

(Citation omitted). The BIA's analysis hinges on the statement that "[t]he [Petitioners] presented evidence to the [IJ] and the [BIA] which was properly considered." But this statement does not shed light on how the BIA assessed whether Petitioners suffered prejudice from counsel's failure to present additional evidence.

The agency repeatedly and expressly found that Petitioners failed to submit corroborating evidence over the course of the Removal Proceedings. And, indeed, Petitioners had submitted no information about whether L.C. would be able to receive educational services, or an education at all, in Guatemala. In denying the petition for cancellation of removal, the IJ focused on this failure, explaining that there was "fairly limited evidence relating to [L.C.]." The IJ observed that although L.C.'s clinical therapist submitted a short letter explaining his diagnoses, she was not made available to testify nor did she explain "how these diagnoses would affect L.C. were he to return to Guatemala with his parents." More broadly, the IJ found that Petitioners "claim[ed] that in Guatemala, their children would not have an opportunity to go to school" but "provided no corroborating evidence in this regard." And although the IJ found Petitioners' testimony credible, the IJ noted that he required "the respondents to corroborat[e] their otherwise credible testimony." Absent

- 12 -

evidence corroborating Petitioners' claim that L.C.'s special needs would prevent him from receiving an education in Guatemala, the IJ was "simply left to speculate as to what the loss of [special education] services would mean to [L.C.]" and thus found no exceptional or extremely unusual hardship. On direct appeal, the BIA "adopt[ed] and affirm[ed]" the decision of the IJ and noted once again that Petitioners did not "provide sufficient corroborating documentation regarding how their removal would adversely affect their children."

In denying Petitioners' second motion to reopen based on their alleged ineffective assistance of counsel claim, the BIA did not grapple with any of these prior determinations by the agency. Instead, by stating that Petitioners "presented evidence to the [agency] which was properly considered," the BIA overlooked the fact that the agency had faulted Petitioners for failing to provide corroborating evidence and denied their claim on that very ground. Thus, the BIA has not provided a meaningful explanation for its conclusion that Petitioners were not prejudiced by counsel's performance. As a result, we remand to the agency so that it can provide the rationale for its decision. See Aponte, 683 F.3d at 13-15 (remanding where the BIA "made no findings, relied on no case law, and engaged in no analysis" because "it is extremely problematic for appeals courts to assess [a BIA decision] absent a reasonably clear signal as to the precise rationale for [the

decision]" (quoting Onwuamaegbu v. Gonzales, 470 F.3d 405, 412 (1st Cir. 2006))).

## C. Petitioners' Prima Facie Case

Petitioners recognize that, even if they can overcome the time and number bars for statutory motions to reopen, the agency can grant their motion only if they establish a prima facie case for cancellation of removal. See Smith v. Holder, 627 F.3d 427, 433 (1st Cir. 2010). They claim they have met that standard here. According to Petitioners, they have established that relief is necessary to prevent exceptional and extremely unusual hardship to their children, as demonstrated by the new evidence they submitted with their second motion to reopen. Specifically, they contend that their children's medical and educational needs would go unmet if they were removed to Guatemala. They focus especially on L.C. Pointing to the BIA's landmark decision in Matter of Monreal-Aguinaga on the exceptional and extremely unusual hardship standard, Petitioners argue that "[f]or cancellation of removal, [the agency] consider[s] the ages, health, and circumstances of . . . United States citizen relatives." 23 I. & N. Dec. 56, 63 (BIA 2001). Petitioners also note that Monreal itself indicates that a "strong applicant might have a qualifying child with . . . compelling special needs in school," just like L.C. Id. The BIA disagreed that Petitioners met the standard. But because

the BIA failed to adequately explain the basis for its conclusion, we remand.

"[T]he BIA must clearly exposit its chosen path." Tillery v. Lynch, 821 F.3d 182, 185 (1st Cir. 2016). This requirement is what allows us "to provide intelligent review on issues over which [we have] appellate jurisdiction." Id. Thus, "we do not review inadequately reasoned decisions." Aponte, 683 F.3d at 14. At a minimum, to conduct appellate review, we must be able to discern the reasoning behind the BIA's conclusions. See H.H. v. Garland, 52 F.4th 8, 23 (1st Cir. 2022).

In this case, the BIA's analysis of Petitioners' prima facie case provided in full:

> We do not diminish [Petitioners'] evidence of the education needs of their children or the lack of comparable educational services in Guatemala. We have considered the record in its entirety, but the record does not establish [a] prima facie showing of exceptional and extremely unusual hardship in the aggregate. Matter of J-J-G-, 27 I. & N. Dec. 808, 811 (BIA 2020); Matter of Monreal, 23 I. & N. Dec. 56, 63-64 (BIA 2001) ("[A]dverse country conditions in the country of return . . . generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship."); Matter of Andazola, 23 I. & N. Dec. 319, 323 (BIA 2002) (observing that reduced educational opportunities and economic detriment are insufficient to establish exceptional and extremely unusual hardship).

(Second and third alterations in original).

- 15 -

We hold that the BIA's decision does not sufficiently illuminate its rationale for finding no exceptional and extremely unusual hardship on the record here. The BIA's overarching conclusion is that "the record does not establish [a] prima facie showing of exceptional and extremely unusual hardship in the aggregate." But it is unclear whether the BIA concluded that (1) as a matter of fact, Petitioners failed to corroborate their assertions about the serious educational hardship L.C. would face in Guatemala, or (2) as a matter of law, L.C.'s claimed hardship would not be exceptional and extremely unusual even if it were corroborated. Nor does the BIA's opinion contain the analysis we would expect for either of these conclusions.

The BIA's citation to three of its prior decisions does not elucidate its reasoning. "While citation alone may be sufficient in certain instances to shed light on the agency's reasoning, [no] cited authority does so here." Tillery, 821 F.3d at 186. For example, the BIA cited Monreal for the proposition that adverse country conditions "generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship." 23 I. & N. Dec. at 63-64. But here, Petitioners did not rely on adverse country conditions generally; they submitted country conditions evidence to corroborate their specific assertion that L.C. would lack educational opportunities in Guatemala due to his disability. This is precisely the sort of

country conditions evidence contemplated by <u>Monreal</u>.  In fact, the full quotation from <u>Monreal</u> explains that:

> A lower standard of living or adverse country conditions in the country of return are factors to consider only insofar <u>as they may affect a qualifying relative</u>, but generally will be insufficient in themselves to support a finding of exceptional and extremely unusual hardship.

<u>Id.</u> at 63-64 (emphasis added).  Petitioners submitted these conditions to demonstrate that "there would not be opportunities or programs to assist [L.C.] with his learning disabilities." Thus, the BIA's citation to <u>Monreal</u> does not clarify its reasoning about why the facts discussed in Petitioners' second motion to reopen did not satisfy the exceptional and extremely unusual hardship standard as it applied to L.C.

The BIA's citation to <u>Matter of Andazola-Rivas</u> for the proposition that "reduced educational opportunities and economic detriment are insufficient to establish exceptional and extremely unusual hardship," 23 I. & N. Dec. 319, 323 (BIA 2002), similarly fails to explain the basis for its ruling.  In that case, the petitioner expressed a general concern that "the schools are better in [the United States] than in Mexico," where "the availability of education [] varies from state to state."  <u>Id.</u> at 320, 323.  The BIA held that this logic "would mean that cancellation of removal would be granted in virtually all cases involving respondents from developing countries who have young United States citizen or lawful

- 17 -

permanent resident children." Id. at 323 n.1. As a result, it held that generalized concerns about inferior schools could not demonstrate exceptional and extremely unusual hardship. See id. But unlike in this case, there was no suggestion that the children in Andazola had special needs, learning difficulties, or psychological diagnoses. See id. at 320 (noting that "[t]he respondent described [her] children's health as 'fine'"). Here, as the IJ pointed out, it is L.C.'s special needs that "separat[e] this case from other cases." Thus, the BIA's reliance on Andazola does not help us understand the basis for the BIA's decision given the different record here.

Finally, the citation to Matter of J-J-G- does not help us understand the BIA's reasoning. That case turned on the noncitizen's failure to corroborate the medical conditions of U.S. citizen family members. See 27 I. & N. Dec. 808, 812 (BIA 2020). For example, the BIA noted that there was no evidence in the record of that case suggesting that the petitioner's daughter would be unable to continue receiving needed medical treatment in Guatemala. See id. The very point of Petitioners' second motion to reopen, however, was to submit evidence that L.C. would be unable to continue his education in Guatemala -- evidence that their previous attorney had failed to submit. The BIA in J-G-G- also held that the other child's diagnoses, including anxiety and ADHD, were not serious ongoing medical conditions because the

- 18 -

record reflected that the treatment goals for that child had been achieved and that he was no longer receiving support. See id. at 809, 813. But the BIA made no such determination here.

Nor does anything else in the BIA's decision clarify the basis for its ruling. If the BIA meant to hold that Petitioners provided insufficient factual corroboration for their claim that L.C. would be deprived of an education in Guatemala, it did not explain its reason for so holding. In particular, the BIA does not appear to have addressed the salient aspects of the country conditions evidence that would seem to support the claimed hardship if considered in light of L.C.'s individual circumstances. See Aguilar-Escoto v. Sessions, 874 F.3d 334, 337 (1st Cir. 2017) ("[W]hile the BIA need not 'discuss every piece of evidence offered,' it is 'required to consider all relevant evidence in the record.'" (emphasis omitted) (quoting Lin v. Mukasey, 521 F.3d 22, 28 (1st Cir. 2008))); Duarte De Martinez v. Bondi, 132 F.4th. 74, 84 (1st Cir. 2025) (vacating due to the BIA's failure to consider the "particular facts presented" (quoting Matter of Gonzalez-Recinas, 23 I. & N. Dec. 467, 468-69 (BIA 2002))); see also Contreras v. Bondi, ___ F.4th ___, 2025 WL 1065174, at *7 (1st Cir. Apr. 9, 2025) ("Because the fact-intensive 'exceptional and extremely unusual hardship' inquiry presents such a high bar, it is vital that due consideration be given to salient record evidence in this context."). If the BIA meant to hold that, even

if corroborated, being deprived of an education due to the lack of special education services is not an exceptional and extremely unusual hardship, we would have expected the BIA to explain why that is so in light of its own precedent indicating the opposite. See Monreal, 23 I. & N. Dec. at 63 (explaining that a child who has "compelling special needs in school" may render their parent a "strong applicant" for cancellation of removal); Andazola, 23 I. & N. Dec. at 323 (suggesting that a child who would be "deprived of all schooling or of an opportunity to obtain any education" would suffer exceptional and extremely unusual hardship). The BIA did neither.

Thus, the BIA has not provided sufficient explanation to allow us to review its ruling that Petitioners failed to establish a prima facie case for relief on the record here. See Adeyanju v. Garland, 27 F.4th 25, 51 (1st Cir. 2022) ("Where the BIA's explanation is too thin to allow us to evaluate the claims of error, we may find an abuse of discretion and remand to the BIA for further explanation."); Tillery, 821 F.3d at 186-87 (vacating and remanding where neither the BIA's citations nor the underlying administrative record "illuminate[s] the BIA's rationale"). We therefore remand so that the agency can provide that explanation.

- 20 -

## IV.  CONCLUSION

For all these reasons, we **grant** the petition for review, **vacate** the BIA's decision, and **remand** to the BIA for further proceedings.